GOLDEN VALLEY MICROWAVE
FOODS, INC., Plaintiff,

v.

WEAVER POPCORN COMPANY, INC.,
et al., Defendants.

Beatrice/Hunt–Wesson, Inc., & Ameri-
can Packaging Corp., Intervening
Defendants/Counterclaimants.

Civ. No. F 88–251.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 23, 1990.

Edward M. O'Toole, Madeline H. Devereux, Chicago, Ill., and Arthur G. Surguine, Jr., Fort Wayne, Ind., for plaintiff.

Thomas M. Shoaff, Randall D. Smith, Fort Wayne, Ind., Richard D. Harris, John Pacocha, Howard E. Silverman, Max Shaftal, Jody L. Factor, Douglas Teaney, Chicago, Ill., P. Michael Miller, Dennis J. Grotrian, Fort Wayne, Ind., Robert A. Schroeder, Richard S. Bullitt & Joseph T. Jakubek, Los Angeles, Cal., for defendants.

### MEMORANDUM OF DECISION AND ORDER

ROGER B. COSBEY, United States Magistrate.

This matter is before the Court[1] on plaintiff's (hereinafter, "Golden Valley")

---

1. Jurisdiction of the undersigned Magistrate is based on 28 U.S.C. § 636(b)(1)(A) and Local

Motion to Compel Production of Documents directed to Beatrice/Hunt–Wesson (hereinafter, "Hunt–Wesson") and American Packaging (hereinafter, "American") filed on June 8, 1990. Hunt–Wesson and American filed a response on June 19, 1990. Golden Valley's reply was filed on June 27, 1990. All filings were under seal because they contained confidential information subject to a protective order. For the reasons stated below the Motion to Compel will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

This patent infringement case,[2] brought by Golden Valley, a producer and seller of microwave food products including microwave popcorn, against Weaver Popcorn (hereinafter, "Weaver"), and Hunt–Wesson and American, manufacturers of microwave popcorn, is again before the court for resolution of various discovery matters.[3] This latest dispute involves: 1) whether Hunt–Wesson has waived the attorney-client privilege as to certain documents, and if so, to what extent; 2) whether American has balked at Golden Valley's requests for production; 3) whether Hunt–Wesson has adequately responded in a recent document production; and 4) whether certain requested Hunt–Wesson draft patent applications (and related documents) are relevant and should be produced. The court will discuss these four areas, and their related facts seriatim.

## II. ATTORNEY–CLIENT PRIVILEGE WAIVER

Golden Valley received from Hunt–Wesson in the normal course of document pro-

duction a copy of a February 25, 1987 letter ("the letter") written by Attorney Schroeder (outside patent counsel for Hunt–Wesson) to Anne Gordinier (in-house counsel for Hunt–Wesson). The letter sets forth in detail an analysis of the patentability and potential infringement problems of a specific microwave device either individually, or in combination with a microwave compatible popcorn bag.[4]

Golden Valley insists that as a result of this production any attorney-client privilege Hunt–Wesson had, has now been waived; not only as to this document, but "any communications referring or relating to attorney opinions addressing these issues." *See* Golden Valley Brief in Support of Motion to Compel at 2. Of course the ultimate sweep of this argument would effectively mean there was no remaining privilege; and Golden Valley now wants Hunt–Wesson to disgorge the forty-one other documents that purportedly enjoy the attorney-client privilege.[5]

Golden Valley also claims that an internal Hunt–Wesson memo (generally referred to as "PX 116"), *Id.* at Exhibit C, also discusses privileged attorney-client matters and bolsters the waiver argument. A fair reading of that memo, however, appears to be a mere response from the Hunt–Wesson Director of Marketing (McNeil) to his apparent superior (Bayless) about Hunt–Wesson's packaging *vis a vis* Golden Valley's patent. Thus, it is not an attorney communication at all, it could not be privileged, and its production would not waive the attorney-client privilege.[6] "The privilege applies only if ... (2) the person to whom the communication was made (a) is a member of the bar of a court, or his

Rule M–1(c), determination of non-dispositive pretrial matters. The Order of Reference was entered on March 15, 1990.

2. A brief factual background of this case was set out in the court's order of January 17, 1990, 130 F.R.D. 92 (N.D.Ind.), and does not bear repeating.

3. When the suit was commenced it was for violation of patent number 4,735,513 ('513), flexible packaging sheets. Since commencement of the case, the court has granted permission to also include patent number 4,878,765

('765), flexible packaging sheets and packages formed therefrom.

4. The letter also refers to a July 30, 1986 letter which apparently considered similar questions as to the popcorn bag alone.

5. The assertedly privileged documents are listed in Golden Valley's brief in support of its motion at Exhibit A, Schedule A.

6. The opinion expressed about the Golden Valley patent in the response by McNeil is clearly his own.

subordinate and (b) in connection with this communication is acting as a lawyer [.]" *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950); 4 Moore's Federal Practice ¶ 26.60[2] page 26–193 (1989).

■ The burden is on the party asserting the attorney-client privilege to establish its existence. *Gramm v. Horsehead Industries, Inc.*, No. 87 Civ. 5122, 1990 WL 142404 (S.D.N.Y. Jan. 25, 1990) (LEXIS, Genfed library, Dist. file); 4 Moore's Federal Practice ¶ 26.60[1] (1989). On that score, however, there does not appear to be any dispute that the requested documents are indeed privileged attorney-client communications. Rather, the parties have focused their arguments on whether or not a waiver of the privilege has occurred.

■ Hunt–Wesson's pitch to the court is that the letter was inadvertently disclosed by an associate from trial counsel's law firm. When the producing party claims inadvertent disclosure it has the burden of proving that the disclosure was truly inadvertent, and that the privilege has not been waived. *Parkway Gallery Furniture v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46 (M.D.N.C.1987). Hunt–Wesson argues that the inadvertent disclosure worked at most a waiver as to the letter alone; and not to the remaining forty-one (or forty-two; *See* Hunt–Wesson's Opposition to Motion to Compel at Exhibit 8, page 2) privileged documents.

■ While an unsworn *mea culpa* is arguably deficient to establish inadvertent disclosure, there are certain other indices that the court can consider to determine whether a disclosure is truly inadvertent. First, it is no secret that this case involves tremendous and ongoing discovery efforts, national in scope, with a number of additional corporate non-parties involved. Counsel for Hunt–Wesson asserts that in total they have examined 90,000 documents; from which they have identified approximately forty-one documents (consisting of approximately 279 pages) as falling within the attorney-client privilege. (Hunt–Wesson Brief in Opposition, at 11). Hunt–Wesson observes, (and Golden Valley confirms) that it has produced approximately 14,000 documents to Golden Valley through discovery.[7]

In addition, numerous intricate protective orders governing document production have been fashioned and agreed to by the parties (including non-parties) for submission to the court. Finally, counsel have been scrupulous in their filings to reflect the protective nature of the information submitted. In all this, it should not be surprising that an inadvertent disclosure could occur. *See Kansas–Nebraska Natural Gas v. Marathon Oil Co.*, 109 F.R.D. 12 (D.Neb.1985) (One document inadvertently disclosed out of 75,000 justifies a finding of non-waiver of attorney-client privilege even in the absence of a description of precautionary procedures). Therefore, the court concludes that the disclosure of the letter was truly inadvertent and not the product of some conscious but erroneous decision; or worse, a sly attempt to gain advantage using truth garbling tactics.[8] *Kansas–Nebraska Natural Gas*, 109 F.R.D. at 21.

■ Golden Valley tries to throw the court a curve with its citation to *Abbott Lab. v. Baxter Travenol Lab., Inc.*, 676 F.Supp. 831 (N.D.Ill.1987) to establish waiver of the attorney-client privilege. This attempt misses the plate, however, because *Abbott Lab.* involved a partial *voluntary* disclosure of privileged attorney-client communications. Voluntary disclosure, as opposed to inadvertent disclosure, waives the privilege as to remaining documents of that

---

**7.** This is 2,000 more documents than the "massive discovery" described in *Parkway Gallery,* 116 F.R.D. at 51.

**8.** The term "truth garbling" comes to us from academia to describe two types of impermissible uses of privileged material. In one situation, a party furnishes the other side with false

evidence while depriving it of the means of detecting the imposition. In the second, a party engages in selective disclosure, disclosing the favorable while withholding the unfavorable. Marcus, *The Perils of Privilege: Waiver and Litigation,* 84 Mich.L.Rev. 1605, 1636 (1986).

subject matter. *See* 4 Moore's Federal Practice ¶ 26.60[2], page 26–201–202 (1989).

Laying aside for the moment the question of whether the attorney-client privilege has been waived as to the letter, the court could find no cases where unintentional or inadvertent disclosure of a privileged document resulted in the wholesale waiver of the attorney-client privilege as to undisclosed documents concerning the same subject matter.

> "It is a far different matter ... to treat the inadvertent disclosure as a waiver with respect to other material that was not turned over. Although the inadvertent disclosure works something of a windfall by giving the opponent materials he would not otherwise have, there is no need to take the much greater step and treat it as a waiver. It is simply an inadvertent disclosure of evidence that could have been held back." (footnotes omitted). Marcus, *supra* note 8, at 1636.

Indeed, whenever the question has been considered by the courts this expansive view of waiver has been rejected. *See, Bud Antle, Inc. v. Gro Tech, Inc.,* 131 F.R.D. 179 (N.D.Cal.1990); *ICI Americas, Inc. v. John Wanamaker of Philadelphia,* No. 88–1346, 1989 WL 38647 (E.D.Pa. Apr. 18, 1989) (LEXIS, Genfed Library, Dist. file) (Applying Pennsylvania law); *International Digital Systems v. Digital Equipment Corp.,* 120 F.R.D. 445, 446 n. 1 (D.Mass.1988); *Parkway Gallery,* 116 F.R.D. at 52; *Standard Chartered Bank, PLC v. Ayala Int'l. Holdings (U.S.), Inc.,* 111 F.R.D. 76, 85 (S.D.N.Y.1986). "The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure." *Parkway Gallery,* 116 F.R.D. at 52. *See supra* note 8 and accompanying text. It is not apparent that Hunt–Wesson is attempting to gain any advantage from the disclosure and Golden Valley does not argue the point. Accordingly, a ruling that no waiver has occurred as to the non-disclosed documents will maintain the confidentiality which is the main purpose of the attorney-client privilege. *Parkway Gallery,* 116 F.R.D. at 52.

The question of waiver as to the letter, however, throws the court into a bit of a legal thicket which is difficult to chop through. When confronted with similar situations, other courts have followed three divergent paths: a subjective analysis, an objective analysis; and a balancing test. *International Digital Systems,* 120 F.R.D. at 448.

The subjective school teaches that inadvertent disclosure can never result in a waiver; because the disclosure was inadvertent, there was no intention to waive the privilege, and one cannot waive the privilege without intending to do so. *See, e.g., Connecticut Mut. Life Ins. Co. v. Shields,* 18 F.R.D. 448, 451 (S.D.N.Y.1955). *See also* Meese, *Inadvertent Waiver of the Attorney–Client Privilege by Disclosure of Documents: An Economic Analysis,* 53 Creighton L.Rev. 513 (1990).

A second group of cases provides that the court need not look beyond the "objective fact," that the document was turned over to opposing counsel to determine whether the party really intended to have the document examined. Even if the production was inadvertent, the "confidentiality" of the document has been "breached" by the disclosure, thereby destroying the basis for the continued existence of the privilege. *See, e.g., Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 548–49 (D.D.C.1970). This is also the path taken by the court in *International Digital Systems.*

A third line of cases indicates that inadvertent disclosure "may" or "may not" result in a waiver of the privilege depending upon whether the party producing the documents took precautions to protect the privilege. *See, e.g., Suburban Sew 'N Sweep, Inc. v. Swiss–Bernina, Inc.,* 91 F.R.D. 254, 258–60 (N.D.Ill.1981). *See also ICI Americas,* 1989 WL 38647, 1989 U.S. Dist. LEXIS at 4064. Courts which adhere to a balancing method consider these

factors to be important: 1) the reasonableness of the precautions taken to prevent the disclosure; 2) the time taken to rectify the error; 3) the scope of discovery; 4) the extent of the disclosure; and 5) the overriding issue of fairness. *Bud Antle,* 131 F.R.D. at 183, *quoting, Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 332 (N.D. Cal.1985).

■ While there are different jurisprudential approaches to the issue, it appears clear that here under either the second or third line of cases, waiver has occurred. First, the court agrees with the rationale expressed in *Underwater Storage.* When "inadvertent" disclosure occurs the court should not be consumed in searching for the true intention of the disclosing party nor should it utilize its crystal clear hindsight to determine the adequacy of the precautions taken.[9] Confidentiality simply has been lost.

■ However even if the balancing approach is indulged, Hunt–Wesson has insufficient evidence before the court to support its burden that it took sufficient precautions to protect the privilege.[10] While admittedly the scope of discovery has been broad, the court is left to speculate what specific precautions were taken by counsel to prevent this disclosure. Hunt–Wesson offers none. Further, there appears to have been no effort by Hunt–Wesson to rectify the error; rather, they treat it as a *fait accompli* as evidenced by Golden Valley's largely unchallenged use of the letter in the depositions of certain Hunt–Wesson employees. Given the extent of disclosure (a full, unredacted letter from counsel) fairness dictates that Golden Valley be allowed to utilize its windfall considering that it already has the document and has utilized it in other discovery proceedings (i.e. the depositions of Hunt–Wesson employees). Accordingly, I find that the attorney-client privilege has been waived as to the letter.[11]

## III. THE ADEQUACY OF AMERICAN'S DISCOVERY RESPONSES

■ Golden Valley also complains about American's puny discovery responses. American suffers by comparison; Hunt–Wesson has produced nearly 14,000 pages of documents to Golden Valley, while American has produced, by latest count, fewer than 200 responsive documents. Golden Valley's suspicions have also been raised by the depositions of American's representatives, Robert Conte (in-house counsel) and Gil Yannuzzi (Technical Director of the Consumer and Industrial Bag Division). These deposition responses seem to indicate that American has launched less than a corporate-wide internal investigation for responsive documents.

American responds that a proper search has been made and that it has done all that can reasonably be expected to respond to the discovery request.

Golden Valley seeks to obtain by this motion a further certification by American's counsel that an appropriate search has been conducted, and that if documents responsive to Golden Valley's request for production at one time existed (but have since been destroyed) that a list of those documents be prepared together with the circumstances surrounding their destruction. The requirement that counsel certify by signing discovery responses, as contained in subdivision (g) of Rule 26 of the Federal Rules of Civil Procedure, is fairly new having been added in 1983 as part of

---

9. It seems somehow fictional to confirm the adequacy of the discovery precautions taken when obviously (as manifested by the disclosure) the precautions, almost by definition, were inadequate.

10. While the court has determined there is sufficient evidence in the record that the disclosure was inadvertent; that does not resolve whether waiver has occurred as to the disclosed document. These are distinct issues and inadvertent *disclosure is merely one factor to consider*

in assessing if a waiver has occurred. *See Parkway Gallery,* 116 F.R.D. at 50.

11. Golden Valley argues that Hunt–Wesson is also claiming the qualified work product privilege as to the undisclosed documents. If this argument lurks somewhere in Hunt–Wesson's brief, it is well hidden. However, since the court has maintained the privilege as to the undisclosed documents the court does not need to reach this issue. Fed.R.Civ.P. 26(b)(1), (3).

an overall plan to curb discovery abuse. *See* 4 Moore's Federal Practice ¶ 26.86 (1989). The courts were also provided with the opportunity to impose sanctions if certification "is made in violation of the rule [.]". Fed.R.Civ.P. 26(g).

The 1983 "Notes of Advisory Committee on Rules" discusses the most recent amendment and adds flesh to these bones:

Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.

The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. See the Advisory Committee Note to Rule 11. See also *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa.1973). In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.

Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand. Thus, the lawyer's certification under Rule 26(g) should be distinguished from other signature requirements in the rules, such as those in Rules 30(e) and 33.

The intent of the rule, as expressed by the Advisory Committee's Notes, has not been met by American's counsel. Golden Valley is justly concerned considering the relatively minuscule production of documents obtained from American, particularly when viewed alongside the responses of the two American employees apparently responsible for conducting the document search. These responses reflect a matter-of-fact inquiry, and then only into certain departments; not the seemingly corporate-wide investigation contemplated by Golden Valley. Further, it appears that as late as June 2, 1990, counsel for American was contemplating additional document disclosures and was still searching for additional documents. (American's Brief in Opposition at Exhibit 8, p. 2). Under such circumstances, American may very well be in violation of the spirit of Rule 26(g). Once counsel for American placed his signature on his client's responses to Golden Valley's discovery request, he certified compliance with the elements of Rule 26(g): that he has read the responses; that to the best of his knowledge, they are consistent with the rules; that they are reasonable; and that they are not being interposed for an improper purpose. While counsel may of course rely on the assertions of the client this reliance must be "appropriate under the circumstances." (1983 Notes of the Advisory Committee). Under the circumstances presented to the court, this reliance may have been misplaced. It is not too much to ask American's counsel to make further inquiry of his client and to recertify the discovery responses.

Therefore on this issue, Golden Valley's Motion to Compel should be granted. Counsel for American should be required to recertify on or before the 20th day of August, 1990, that they have made a reasonable effort to assure that American has provided all the information and documents available and that they are responsive to the discovery demand. The certification should also contain the statement that American has conducted a thorough corporate-wide search for responsive documents. Further, American's response to the discovery request should also disclose if any documents (that would have been responsive to the request) have been destroyed and, if so, a listing of those documents and

the circumstances surrounding their destruction.

## IV. THE ADEQUACY OF HUNT–WESSON'S DOCUMENT PRODUCTION

 Golden Valley also complains that Hunt–Wesson has failed to adequately respond to its requests for production of specific documents. Hunt–Wesson responds that they have promised that the additional documents will be produced and most of them have now in fact been produced. Despite this assurance, Golden Valley specifically requests that Hunt–Wesson be ordered to supplement its most recent production in one particular.

Specifically, Golden Valley notes that Hunt–Wesson recently produced documents which included a number of manufacturing guidelines for microwave popcorn bags that included a susceptor. Those guidelines set forth the maximum number of unpopped kernels allowed in a Hunt–Wesson package after cooking. Golden Valley now requests that Hunt–Wesson produce similar specifications for packages that do not contain a susceptor. Golden Valley claims that the information would be relevant to the issue of "long felt need." [12] In that regard, the information would appear to be relevant and would place the already disclosed documents into a full factual context. Fed.R.Civ.P. 26(b)(1). While Golden Valley's request, in its brief, is not a generally accepted method of seeking document discovery, the overriding need to keep discovery continuing apace suggests an exigent response.

Fed.R.Civ.P. 26(e) provides the vehicle:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(3) A duty to supplement responses may be imposed by order of the court ... [.].

The Court now finds that in order to facilitate and expedite discovery of relevant information a duty to supplement and complete the previous response should be imposed upon Hunt–Wesson. Accordingly, Hunt–Wesson shall be ordered to supplement its response by disclosing the manufacturing guidelines/specifications which set forth the maximum number of unpopped kernels allowed in Hunt–Wesson packaging after cooking, as to those packages which do not contain a susceptor.

## V. HUNT–WESSON'S PATENT APPLICATIONS AND RELATED DOCUMENTS

Golden Valley's Request for Production of Documents seeks the production of any patent applications directed to flexible laminates containing microwave susceptors whether or not they were filed in the United States Patent and Trademark Office (hereinafter "PTO"). Golden Valley also requests documents referring or relating to such applications. Hunt–Wesson responded by producing the applications that had actually been filed with the PTO but stopped short of producing drafts of applications, or documents which have not been filed in the PTO, and non-PTO documents and correspondence relating to the applications.[13]

 The court observes that Hunt–Wesson's initial reaction to the request was that the documents were violative of the attorney-client privilege and the work product doctrine. Hunt–Wesson also objected because the request was overbroad and sought the production of irrelevant documents.[14] Now, however, Hunt–Wesson

---

**12.** One of the "secondary considerations" which the court can utilize in determining whether a product is patentable. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

**13.** Hunt–Wesson describes these remaining documents, as: unfiled drafts of applications, correspondence to include correspondence between Hunt–Wesson and its attorneys, and other documents not filed in the PTO. (*See* Hunt–Wesson's Opposition to Golden Valley's Motion to Compel Production of Documents, pgs. 3 at 5).

**14.** American Packaging purportedly does not have any patent applications called for by the request. (*See* Hunt–Wesson's Opposition to

merely argues that the requested documents are irrelevant. This may be in silent recognition of those cases that have held that draft patent applications are not privileged. *Howes v. Medical Components, Inc.*, No. 84–4435, 1989 WL 15191, (E.D.Pa. Feb. 22, 1988) (LEXIS, Genfed library, Dist. file); *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152 (W.D.N.Y. 1982); *Sneider v. Kimberly Clark Corp.*, 91 F.R.D. 1 (N.D.Ill.1980). *See* 3 P. Rosenberg, Patent Law Fundamentals ¶ 17.09[4] (2d ed. 1990). Further, the correspondence between Wesson and its counsel may not be privileged if the attorney was functioning merely as a conduit to the PTO. *Howes*, 1988 WL 15191, 1988 U.S.Dist. 1320; 60 Am.Jur.2d. *Patents* § 1000 (1987). The work product immunity has been held not to apply to the preparation of a patent application for the reason that it is too distant in time to be considered as having been made "in anticipation" of litigation. *Oak Indus. v. Zenith Elec. Corp.*, 687 F.Supp. 369 (N.D.Ill.1988). Further, a patent is obtained in an *ex parte* proceeding and until that proceeding becomes adversarial in nature the work product rule has no application. *Research Inst. for Medicine & Chemistry, Inc. v. Wisconsin Alumni Research Found.*, 114 F.R.D. 672 (W.D.Wis.1987).

■■■■■ Having abandoned attorney-client privilege and work product immunity Hunt–Wesson's objection focuses on lack of relevancy. Generally, any relevant matter is discoverable unless it is privileged. The party opposing discovery has the burden of showing that interrogatories are overly burdensome, *Trane Co. v. Klutznick*, 87 F.R.D. 473 (W.D.Wis.1980); or that the requested discovery is not relevant. *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C.1978).

■■■ According to the Supreme Court, Rule 26(b)(1) is to be construed broadly and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct.

2380, 57 L.Ed.2d 253 (1978). A request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the subject matter of the action. *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 251, 254 (N.D.Ill.1978); 3 P. Rosenberg, *supra* p. 16.

■■■ The question of the patentability of Golden Valley's '513 patent and '765 patent are clearly at issue. A new product is not patentable unless it is non-obvious when made. 35 U.S.C. § 103. The Supreme Court, interpreting Section 103 stated:

Under 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill and the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Graham v. John Deere Co.*, 383 U.S. at 17–18, 86 S.Ct. at 694.

Within this prior art framework the relevancy of the Hunt–Wesson draft patent applications and other related documents would appear to be apparent. Further, the "secondary considerations" of a prior art determination enhance the possibility of relevance; specifically, prior attempts and failure of others in attempting to accomplish the inventive results, fulfillment of long felt needs in the art, the commercial success of the claimed invention and copying of others.

More to the point, the documents could establish the level of skill established by Hunt–Wesson at the time the purported invention was made. Further, the scope and content of the prior art cited by Hunt–Wesson, or known to it, would be relevant. Of course, the prior attempts and failures of others, including Hunt–Wesson, to devel-

Golden Valley's Motion to Compel Production of Documents at pg. 2).

op an invention to meet a long felt need in the industry would also be relevant. On the whole, Hunt–Wesson has failed to establish that the undisclosed documents would not be relevant. Indeed, all in all they seemingly are relevant.

Having jumped this hurdle, however, the court will only require disclosure consistent with the terms of the protective orders previously entered in this case. However, if Hunt–Wesson in *good faith* truly believes that the attorney-client privilege applies to any document to be produced then it may apply to the court for a further protective order in which case the court will conduct an *in camera* inspection.

## VI. CONCLUSION AND ORDER

Golden Valley's Motion to Compel Production of Documents is DENIED in part as to its request to have Hunt–Wesson produce additional documents protected by the attorney-client privilege (i.e. those listed in Golden Valley's brief in support of its motion at Exhibit A, Schedule A). Golden Valley's Motion to Compel Production of Documents is GRANTED in part, however, in that counsel for American shall recertify on or before August 20, 1990, that they have made a reasonable effort to assure that American has provided all the information and documents available which are responsive to Golden Valley's discovery demands as more particularly set forth in section III, *supra.* Hunt–Wesson shall also supplement its prior discovery response as more particularly set forth in section IV, *supra.* Finally, Hunt–Wesson shall respond fully to Golden Valley's Requests for Production numbered 2, 7 and 13 as more particularly set forth in section V, *supra.*

The Clerk shall forthwith distribute this order to counsel but shall cause the same to be sealed in the court's file for 30 days after entry. Within the next 30 days this order may only be unsealed upon order of the court. However, this order shall automatically be unsealed by the Clerk after 30 days unless counsel specifically request

that it remain sealed because of their belief that it contains confidential information.