**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, and Board of Trustees, Sheet Metal Workers Local No. 292 Pension Fund, Plaintiffs,**

v.

**PALLADIUM EQUITY PARTNERS, LLC, Palladium Equity Partners II, LP, Palladium Equity Partners II–A, LP, and Palladium Equity Investors II, LP, Defendants.**

Case No. 08–12586.

United States District Court,
E.D. Michigan,
Southern Division.

July 14, 2010.

Barbara A. Patek, Craig E. Zucker, Erman, Teicher, Southfield, MI, Brian J. Petruska, Jeffrey S. Swyers, Marc H. Rifkind, Slevin & Hart, Washington, DC, for Plaintiffs.

Debra A. Colby, Richard M. Tuyn, Ogletree, Deakins, Bloomfield Hills, MI, Ronald E. Richman, Schulte, Roth, New York, NY, for Defendants.

*OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER INVALIDATING DEFENDANTS' CLAIMS OF PRIVILEGE, GRANTING DEFENDANTS' MOTION IN LIMINE, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EXPERT WITNESS REPORT*

DAVID M. LAWSON, District Judge.

Presently before the Court are three evidentiary motions, two dealing with the disclosure by the defendants to the plaintiffs' attorneys of documents in paper and electronic format that the defendants argue are privileged, and one dealing with the defendants' proposed expert witness. In the first two motions (a motion by the plaintiffs to determine the validity of the defendants' privilege claim and the defendants' corresponding motion *in limine*), the defendants assert the attorney-client privilege to 184 documents they say were inadvertently disclosed. In the third motion, the plaintiffs argue that the opinion of the defendants' proposed expert, Steven M. Adams, will not be helpful to the trier of fact. The Court heard oral argument on the motions on August 4, 2009 and May 10, 2010. The Court finds that application of Federal Rule of Civil Procedure 26(b)(5) and Federal Rule of Evidence 502 requires that the defendants' claim of privilege be sustained because the disclosures were inadvertent and the defendants took reasonably prompt measures to rectify their mistake. The Court also finds that although portions of the Adams report may be relevant, the report contains certain opinions that would not be helpful to a resolution of the issues presently pending before the Court. Therefore, the Court will deny the plaintiffs' motion to invalidate the defendants' claim of privilege, grant the defendants' motion *in limine*, and grant in part and deny in part the plaintiffs' motion to strike the expert witness report.

I.

The case involves claims by the plaintiffs—two multi-employer pension plans—that the defendants—three private equity investment partnerships and their common financial advisor—that the defendants are liable for the withdrawal liability of Haden Schweitzer Corporation and Haden Environmental Corporation (the Haden companies) under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453. The plaintiffs contend that the defendants are jointly and severally liable for the Haden companies' obligation because the defendants are part of the same controlled group within the meaning of 29 U.S.C. § 1301(b), and the defendants are *alter egos* of the Haden companies as well.

## II.

In the plaintiffs' motion for an order invalidating the defendants' claims of privilege and the defendants' motion *in limine*, the parties ask the Court to rule on the validity of the defendants' claim of attorney-client privilege to 184 separate documents the defendants have delivered to the plaintiffs' attorneys during discovery. The documents fill over 1,000 pages that the defendants produced to the plaintiffs from December 2008 through March 2009.

Beginning October 10, 2008, the plaintiffs served on defendants a series of document requests that resulted in the production of more than 63,000 documents consisting of over 4.3 million pages in both paper and electronic format. On three occasions from November 10, 2008 through January 29, 2009, the plaintiffs produced to the defendants over 81,000 pages of materials for review; and on four more occasions from January 29, 2009 through March 4, 2009, the plaintiffs produced 874,138 additional documents for the plaintiffs' review.

On four separate occasions—on March 26, 2009, March 31, 2009, June 1, 2009 and June 26, 2009—the defendants submitted privilege logs identifying documents that the defendants claimed were inadvertently produced to the plaintiffs on December 23, 2008 and January 29, 2009. Among them are (a) attorney drafts of memoranda on attorney letterhead (DE008976); (b) attorney memoranda marked as "Privileged and Confidential" (DE0791410); (c) case printouts marked with what appear to be attorney handwritten notes (D0071–807); (d) draft agreements marked as attorney drafts (D0056501, D0054059); (e) hundreds of pages of emails that include communications between counsel (D0072001), communications between counsel and Palladium personnel (DE0791410, DE0863711.012636), communications between counsel, Palladium personnel, and Haden personnel (DE0595719, DE0863712.003017), and (f) several documents that appear to be privileged that were produced multiple times in multiple formats. *See* Dkts. # 67–68 (sealed copies of 105 documents alleged to be privileged by the defendants). However, the document causing the most acrimony between the parties is the May 13, 2005 e-mail from PEP LLC Chief Financial Officer Kevin Reymond in which Reymond admits that Palladium controlled Haden International Group and Haden Environmental, Inc., which goes to the heart of a disputed factual issue that the plaintiffs seek to establish in their case before the Court. *See* Exs. 32–34, Docs. Filed by Pls. Under Seal [dkt. # 68], at 84. There appears to be no dispute the email is privileged because Reymond relates a conversation he had with PEP LLC counsel Adam Harris concerning legal advice. According to the plaintiffs, the defendants produced the May 13, 2005 email from Kevin Reymond on four separate occasions (under Bates Nos. DE 863711.004342, DE 863711.004343, DE0865025, and DE0865026), and the defendants did not list the email in their privilege logs until June 22, 2009.

The plaintiffs argue that, given the volume and extent of the disclosure at issue and the defendants' delay in mitigating allegedly unintended disclosure, the plaintiffs' disclosure was not inadvertent within the meaning of Fed.R.Evid. 502. The plaintiffs emphasize that many of the documents were produced to the plaintiffs several times, and maintain that the defendants conceded in the March 31, 2009 letter from Meredith Nachman of Schulte Roth & Zabel LLP representing the defendants that they did not perform an adequate review of certain documents. *See* Ex. A to Pls.' Mot. [dkt. # 66], at 2 n. 1 ("as soon as we realized that you had documents we suspected might be privi-

leged, we asked that you sequester them and not review them"). They further point out that much of the evidence the defendants produced was in electronic format—and therefore was easily searchable, since many of them were marked "privileged and confidential," and came directly from the attorneys involved in the case. The plaintiffs also state that they relied on these documents in formulating their discovery strategy.

The defendants emphasize the enormity of the document production in this case and suggest that the mistaken disclosure of 184 out of over 63,000 documents is not inconsistent with inadvertence. They also insist that the plaintiffs are obliged to return the documents under a stipulated protective order that contains the following language:

> If a party has inadvertently produced to the other party information subject to [a] claim of privilege or immunity, the other party upon request shall promptly return the information for which a claim of inadvertent production is made. The party returning such information may then move the Court for an order compelling production of such information, but said party shall not assert that inadvertent disclosure constitutes a waiver.

Stip. Protect. Order, Dec. 15, 2009, at ¶ 14 [dkt. # 40]. The defendants accuse the plaintiffs of not complying with Federal Rule of Civil Procedure 26(b)(5)(B) that requires a party notified of a privilege claim to return to the sender, sequester, or destroy the specified information and any copies of it and not use this information until the claim of privilege is resolved. Likewise, the defendants contend the plaintiffs acted unethically when they sat on the information they knew to be privileged, citing *Resolution Trust Corporation v. First of America Bank*, 868 F.Supp. 217, 220 (W.D.Mich.1994). Of the disputed documents, the defendants acknowledge

that 116 of them were returned, but they maintain that the plaintiffs are still holding at least 18 documents recalled as privileged by the defendants. The defendants contend that the recently enacted Rule 502 was intended to protect against waiver of privilege disclosure in exactly these circumstances, that is, when vast amounts of documents are exchanged during discovery and when the privileged information is easily overlooked.

Federal Rule of Evidence 502, which became effective on September 19, 2008, addresses the waiver of evidentiary privileges in cases of inadvertent disclosure as follows:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.
>
> When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed.R.Evid. 502(b). The rule was adopted in response to "the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information. This concern is especially troubling in cases involving electronic discovery." Explan. Note to Fed.R.Evid. 502 (rev. Nov. 28, 2007) (citing *Hopson v. City of Baltimore*, 232 F.R.D.

228, 244 (D.Md.2005) (electronic discovery may encompass "millions of documents" and insist upon "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation")).

"When a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent." *Fox v. Massey–Ferguson, Inc.*, 172 F.R.D. 653, 671 (E.D.Mich.1995) (citing *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D.Ind.1990)). Although Rule 502 does not contain any factors to determine whether the disclosure should constitute a waiver, the Advisory Committee Notes to the rule suggest a flexible test that considers "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness[,] ... the number of documents to be reviewed and the time constraints for production[,] ... [the] use ... [of] advanced analytical software applications and linguistic tools in screening for privilege and work product," and "implementation of an efficient system of records management before litigation." Explan. Note to Fed.R.Evid. 502, at Federal Civil Judicial Procedure and Rules (2010 Ed.), at 434; *see also Fox*, 172 F.R.D. at 671 (which considers "(1) the reasonableness of precautions taken in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the magnitude of the disclosure, (4) any measures taken to mitigate the damage of the disclosures, and (5) the overriding interests of justice"). Neither the Sixth Circuit nor any other court of appeals has addressed a list of factors under Rule 502 yet.

The Explanatory Note to Rule 502 also states that although the rule "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake," the "rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." For example, when a privileged document is used at a deposition, and the privilege holder fails to object immediately, courts have found the privilege to be waived. *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir.1999); *Brandon v. D.R. Horton, Inc.*, No. 07–CV–1256, 2008 WL 2096883, at *3 (S.D.Cal. May 16, 2008) (listing cases); *cf. Clarke v. J.P. Morgan Chase & Co.*, No. 08–CV–02400, 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (holding two-month delay in asserting privilege, including failure to assert privilege at a deposition, weighed in favor of finding waiver and describing cases in which waiver was found after delay ranging from six days to one month). Of course, the burden of proving that disclosure was truly inadvertent lies with the party producing the document. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D.Ind.1990).

Rule 502 also contemplates separate protective orders fashioned by the court or by agreement of the parties. Fed.R.Evid. 502(d) & (e). As explained in the Explanatory Note:

> ... the court order may provide for return of documents without waiver irrespective of the care taken by the disclosing party; the rule contemplates enforcement of "claw-back" and "quick peek" arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product. *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y.2003) (noting that parties may enter into "so-called 'claw-back' agreements that allow the

parties to forego privilege review altogether in favor of an agreement to return *inadvertently produced* privilege documents"). The rule provides a party with a predictable protection from a court order—predictability that is needed to allow the party to plan in advance to limit the prohibitive costs of privilege and work product review and retention. Explan. Note to Rule 502(d) (emphasis added); *see also Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 49 n. 6 (S.D.N.Y.2009) (emphasizing that a party constrained by production deadlines may seek to negotiate a clawback provision under Fed.R.Evid. 502(d), which would allow it to forego privilege review altogether).

█ The stipulated protective order in this case represents just such a clawback agreement. Moreover, the Court is satisfied that the defendants took reasonable steps to prevent disclosure during the voluminous document production. According to the defendants, their law firm reviewed 63,025 documents totaling an estimated 4.7 million pages; produced 56,846 documents totaling some 4.3 million pages; and prepared privilege logs for 1,306 documents. The defendants used a team of sixteen associates (who were supervised by two senior associates) to conduct review, and the team spent about 2,500 hours reviewing 8,700 hard copy documents and more than 59,000 electronic documents, including emails. They say review was complicated by the fact that the documents contained correspondences with at least eleven law firms representing defendants and their affiliates on a broad range of matters.

The Court also is satisfied that the defendants took prompt steps to recall the documents once they realized that they had been disclosed. In an affidavit, attorney Scott A. Gold avers that once the defendants discovered the disclosure of the May 13, 2005 email "late in the day on Friday, June 19, 2009," they notified the plaintiffs on Monday, June 22, 2009 of the inadvertent production. With respect to the reason for inadvertent production, Mr. Gold explains:

Plaintiffs list four iterations of the May 13, 2005 Email that Defendants produced to them. This is an inaccurate description. The four iterations are actually two pairs of documents. The first pair, Bates-stamped DE0865025 and DE0865026, are two pages that were shuffled within a non-privileged 36–page draft document entitled Amended and Restated Limited Liability Company Agreement of Haden Prism, Inc., dated May 3, 2005 ... that was produced to Plaintiffs. Because the copies of the May 13, 2005 Email Bates-stamped DE0865025 and DE0865026 were in the middle of an otherwise non-privileged document, they were inadvertently missed by the attorneys reviewing the Hard Copy Documents for privilege. They were therefore inadvertently produced as part of the larger document.

The other two iterations of the May 13, 2005 Email bear the document identifiers DE083711.004342 and DE0863711.004343. DE083711.004342 and DE0863711.004343 are a pair of documents located sequentially in the Concordance database, and were reviewed for privilege by the same Reviewing Associate. That Reviewing Associate inadvertently failed to "tag" the documents with the appropriate marker for privilege that they needed to keep them out of the production.

Gold Aff. ¶ 18(b)-(c), at 11 (footnote omitted).

The Court, therefore, believes that the defendants are entitled to avoid a finding of waiver as a result of the production of the discovery documents, which the Court is satisfied was inadvertent. The Court

expresses no opinion on the question whether waiver of the privilege resulted from by other conduct before or during the litigation. The parties may raise those issues at the appropriate time for dealing with admissible evidence at trial.

### III.

In the third motion, the plaintiffs move to strike the expert witness report of Steven M. Adams, an attorney, who apparently intends to testify to the usual custom and practice of private equity fund managers when dealing with their portfolio companies, and the negative effects a judgment for the plaintiffs could have on the private equity industry. The plaintiffs argue that Adams's opinions will not aid in evaluating either the controlled group liability or *alter ego*/single employer claims. The defendants respond that Adams is qualified to render expert testimony on the issues in this case and that the private equity fund structure is not a matter of common knowledge. The defendants contend that Adams's testimony regarding the business structure of private equity funds and the rationale for that structure bears on whether the three independent LPs could form a partnership under the multifactor test for formation of the partnership, and it is important for a determination whether the relationship constitutes a sham in connection with the *alter ego* and single-employer analysis.

Any challenge to expert testimony must begin with Rule 702 of the Federal Rules of Evidence, which was modified in December 2000 to reflect the Supreme Court's emphasis in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), on the trial court's gatekeeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies as to an opinion based on some sort of specialized knowledge. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. The language added by the amendment to Rule 702 restates *Daubert*'s insistence on the requirements that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately "fits" the facts of the case into the theories and methods he or she espouses. *See Daubert*, 509 U.S. at 591–93, 113 S.Ct. 2786.

In addition, expert testimony is not admissible unless it will be helpful to the factfinder. Such testimony is unhelpful when it is unreliable or irrelevant, as the Court observed in *Daubert, see id.* at 591–92, 113 S.Ct. 2786, and when it merely deals with a proposition that is not beyond the ken of common knowledge. *See, e.g., Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir.1994) ("If everyone knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'") (quoting Rule 702). Finally, before an expert may give an opinion, the witness must be qualified to do so. *See id.* at 1348–50; *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir.1998). The proponent of expert testi-

mony must establish all the foundational elements of admissibility by a preponderance of proof. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir.2001) (citing *Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786).

■ An opinion is "reliable" from an evidentiary standpoint if it is "valid" according to the discipline upon which it is based. *See Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. In determining validity, the Court's focus is on principles and methodology, not results. And there is no precise formula by which a court might deem a methodology "acceptable" or "unacceptable." *Daubert* and its progeny have therefore not created a straightjacket, *Gross v. Commissioner of Internal Revenue,* 272 F.3d 333, 339 (6th Cir.2001), but rather counsel a flexible approach, reconciling the "liberal thrust" of Rule 702 which "relax[es] the traditional barriers to opinion testimony" with the responsibility to "screen[ ] such evidence" in order to keep unreliable or invalid opinions from the jury. *See Daubert,* 509 U.S. at 588–89, 113 S.Ct. 2786 (quotation marks and citations omitted); *see also Jahn v. Equine Serv., PSC,* 233 F.3d 382, 388 (6th Cir.2000). There are several hallmarks of reliability that serve as proxies for the four factors identified in *Daubert. See Zuzula v. ABB Power T & D Co.,* 267 F.Supp.2d 703, 712 (E.D.Mich.2003).

■ Adams likely is qualified to describe the structure of private equity firms and their relationships with the companies in which they invest. According to him, he is a founding partner, former general counsel, and current senior advisor to a Minnesota investment fund managing over $5 billion in assets. He has twelve years of firsthand experience in structuring and negotiating the terms of separate private equity funds and hedge funds and negotiating acquisition and disposition of numerous portfolio companies. And he teaches Mergers & Acquisitions at the University of St. Thomas School of Law and is on the Board of Directors of several large companies.

■ In addition, Adams's opinions comparing the way the defendants operated the Haden Companies to the way private equity funds operate in general may shed some light on the defendants' intent in forming the limited partnerships (LP), the rationale for some of the LPs' management practices, and whether the LPs indeed intended to form a partnership or a joint venture. Details of private equity funds' investment and management practices are outside the domain of an ordinary person's knowledge, and might be helpful to a decisionmaker.

■ However, the plaintiffs have a valid point when they challenge Adams's testimony that holding the defendants accountable would have a detrimental effect on the private equity industry. Such policy-type arguments fall outside of the scope of expert testimony sanctioned by Rule 702, and are irrelevant to issues at hand. *Cf. Chavez v. Carranza,* 559 F.3d 486, 498 (6th Cir.2009) (holding that "[a]n expert opinion on a question of law is inadmissible") (citing *Berry v. City of Detroit,* 25 F.3d 1342, 1353–54 (6th Cir.1994)).

The Court concludes, therefore, that Mr. Adams may testify as to issues of structure and function of the defendants compared to comparable practices in the industry, but he may not provide opinions on the consequences of a liability finding against the defendants.

**IV.**

The Court finds that the defendants' disclosure of the subject documents was inadvertent, they took reasonable measures to ensure against unintended disclosure, and they promptly sought to rectify

the disclosure when they learned about it. Therefore, the Court finds that the defendants did not waive the privilege. The Court expresses no definitive ruling on the validity or applicability of the attorney-client privilege with respect to any particular document at this time. The report of the defendants' expert witness need not be stricken, but the subject matter of his testimony will be restricted.

Accordingly, it is **ORDERED** that the plaintiffs' motion for an order invalidating the defendants' claims of privilege [dkt. # 66] is **DENIED** and the defendants' motion *in limine* [dkt. # 120] is **GRANTED.**

It is further **ORDERED** that the plaintiffs' motion to strike the defendants' expert witness report [dkt. # 65] is **GRANTED IN PART AND DENIED IN PART.** Witness Adams may not provide testimony on the consequences of a liability finding against the defendants.