JACK NIEUKIRK, Plaintiff-Appellee, *v.* BOARD OF FIRE & POLICE COMMISSIONERS, PEORIA, Defendant-Appellant.

Third District    No. 80-195

Opinion filed June 29, 1981.—Rehearing denied August 18, 1981.

David L. Thomas and Eric Margolis, both of Peoria, for appellant.

Jerry Serritella, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an action brought pursuant to the Illinois Administrative Review Act to review the decision of the appellant, the Board of Fire and Police Commissioners (Board) discharging the appellee, Jack Nieukirk, from the city of Peoria Fire Department. The circuit court of Peoria County ordered the appellee be reinstated, and it is from that order which the Board appeals.

Nieukirk was charged with cheating on a promotion examination administered December 16, 1978. At the hearing before the Board on November 1, 1979, concerning those charges, one of the members of the Board asked Nieukirk, "Mr. Nieukirk, I would like to ask you at this time did you also take a polygraph examination from Mr. Lousig-Nont?" Nieukirk responded, "On advice of my attorney I cannot answer the question at this time." The attorney for the Board advised Nieukirk that he had no right to refuse to answer. The question was then asked again, and Nieukirk again refused to answer. Nieukirk was eventually found innocent of cheating on the examination.

On January 4, 1980, the city fire marshall filed charges against Nieukirk for refusing to answer the questions at the November 1, 1979, hearing, charging that this failure to answer was: (1) conduct unbecoming an employee which might be detrimental to the Service (Rule 2000.28(g) of the Rules and Regulations of the Peoria Fire Department); (2) an act or omission contrary to good order and discipline of the department (Rule 2000.28(p)); and (3) an act or omission contrary to the law of the State of Illinois. A hearing was held on the charges on January 23, 1980. After taking the case under advisement, the Board discharged Nieukirk from the fire department for conduct unbecoming an employee which might be detrimental to the service, and an act contrary to good order and discipline of the department as charged.

Nieukirk sought administrative review of the Board's decision, alleging that the information sought was protected by the attorney-client privilege, and the punishment of discharge was unreasonable and an abuse of discretion. The trial court reversed the decision of the Board, stating that the decision was against the manifest weight of the evidence and contrary to law. The court held the information sought to be privileged.

On appeal, the Board raises two issues: (1) Whether or not the information sought by the Board was privileged; and (2) whether or not the penalty ordered by the Board was excessive.

Appellant's first issue on appeal is whether or not the Board sought privileged information in asking whether Nieukirk had taken a polygraph examination. The Board contends this information was not privileged, while Nieukirk argues that it was a privileged communication in that it was protected by the attorney-client privilege or as attorney's work product.

■■ The attorney-client privilege protects communications made by a client to an attorney under the following circumstances: (1) where legal advice of any kind is sought from an attorney in his capacity as such, (2) the communications relating to that purpose, (3) made in confidence by the client, (4) are at his instance permanently protected from disclosure by the client or the attorney, (5) unless that protection is waived. (*People v. Adam* (1972), 51 Ill. 2d 46, 280 N.E.2d 205.) The person asserting the privilege has the burden of proving its existence. *Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92.

■■ We believe appellee has failed to carry his burden. The record is devoid of any facts expressly proving the elements of the privilege. At the first hearing, Nieukirk simply refused to answer the question regarding the second polygraph examination on the advice of his attorney. At the second hearing, the evidence consisted solely of the transcript of the first hearing and the testimony of an attorney testifying as to the law of the case. No facts are presented to which the elements of the privilege apply. Absent express facts establishing the privilege, we can only conclude that the reason for the second polygraph examination of Nieukirk by Lousig-Nont was for purposes other than Nieukirk's seeking professional advice from his lawyer.

■■ Nieukirk's next contention is that the information regarding the polygraph examination was protected as attorney's work-product. In *Monier v. Chamberlain* (1966), 34 Ill. 2d 351, 221 N.E.2d 410, the Illinois Supreme Court enumerated the requirements for work-product to be privileged and not discoverable. The court held that work-product covered only those memoranda, reports or documents which reflect the employment of the attorney's legal expertise. Those "which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience" (Miller, *Recent Discovery*, 1963 Ill. L.F. 666, 673), and only those can properly be said to be made in preparation for trial and thus are privileged. Thus, the question is reduced to whether or not the polygraph expert was engaged in preparation for trial, thus precluding the discovery of his identity and his opinion.

Discovery of expert witnesses and the expert's opinion is controlled by section 58(3) of the Civil Practice Act, which reads:

"A party shall not be required to furnish the names or addresses

of his witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties." Ill. Rev. Stat. 1979, ch. 110, par. 58(3).

The Illinois cases under this provision are not helpful in this case. However, the historical note to section 58(3) (Ill. Ann. Stat., ch. 110, par. 58(3), Supplement to Historical and Practice Notes at 118 (Smith-Hurd Supp. 1980-1981), suggests that the provision is parallel to Federal Rule of Civil Procedure 26(b)(4), and we believe cases interpreting Rule 26(b)(4) are appropriate precedent for interpreting section 58(3). Rule 26(b)(4) expressly provides that an expert witness engaged to testify shall be identified. It further provides that the expert's opinion and the facts on which the opinion is based shall be disclosed. The rationale for this rule is that the expert's expected testimony is evidence as well as trial preparation. Therefore, it is discoverable.

However, the Federal rule expressly exempts facts known or opinions held by experts who are retained or specially employed by a party in anticipation of litigation or preparation for trial and who are not expected to be called as a witness at trial from discovery. (See *Seiffer v. Topsy's International, Inc.* (D. Kan. 1975), 69 F.R.D. 69.) This information is discoverable only upon a showing of exceptional circumstances. The facts and opinions of the expert developed solely in preparation for the litigation are not subject to disclosure, being the attorney's work-product, in the absence of exceptional circumstances.

■■ Thus, the question becomes whether or not the polygraph examiner was specially employed by Nieukirk's attorney solely as an aid in preparing for the administrative hearing, without an intent that the polygraph examiner testify at the hearing. Because Nieukirk desires to exclude the information as privileged, he has the burden of proving that the information is work product, *i.e.*, that Nieukirk's attorney hired Lousig-Nont solely for the purpose of aiding him in preparing for the hearing and with no intent that Lousig-Nont testify. Nieukirk must be able to point to facts in the record that show an original lack of intent that Lousig-Nont testify.

■■ It is not sufficient proof to show that Lousig-Nont did not actually testify at the hearing. Nieukirk must prove that when Lousig-Nont was originally consulted, it was intended that he be a nontestifying expert. Nieukirk has failed to so prove. Not only are there no facts proving Lousig-Nont was originally intended to be a nontestifying expert, there is evidence from which it can be inferred that Lousig-Nont was originally intended to testify. There were three other men besides Nieukirk who were charged with cheating on the promotion examination. They were

also given polygraph examinations by Lousig-Nont and Lousig-Nont testified to the favorable results for these men at their hearings. It is reasonable to infer that had the results in Nieukirk's examination been favorable, Lousig-Nont would have testified in Nieukirk's behalf. For these reasons, we find that Nieukirk failed to prove Lousig-Nont was intended to be a nontestifying expert. Therefore, the information regarding the polygraph examination is not protected as work product and had to be revealed upon demand at the hearing. There was no error in asking about the polygraph examination at the administrative hearing, and Nieukirk should have answered the question.

We thus reach the second issue raised in this appeal—whether or not the Board's penalizing Nieukirk for failing to answer the question was appropriate. At the second hearing, Nieukirk was found guilty of conduct unbecoming an employee which might be detrimental to the department and an act contrary to good order and discipline of the department. As a result the Board discharged Nieukirk. We believe that due to the unique circumstances of this case, such an action was not only excessive, no penalty at all should have been applied.

■■ There is no evidence that Nieukirk's failure to answer the question contributed to the Board's finding that he was innocent of the charges of cheating. There were originally four firemen charged with cheating on the promotion exam. They all took the Board-ordered polygraph examination, and they all failed it. Subsequently they all took a second examination administered by Lousig-Nont. Three of them passed. Such a result casts grave doubt upon the accuracy of the Board's polygraph examination. Clearly, the Board felt it was not accurate, because they found Nieukirk innocent of cheating despite the fact that he failed the first examination and there was no evidence introduced of the results of another examination. We do not believe that the results of another polygraph examination, which the Board clearly distrusted, would have affected the Board's decision.

Neither is there any evidence that Nieukirk was trying to obstruct the case being made against him. He took the Board's polygraph examination as ordered. He cooperated with the Board except for the one question, and in not answering that question he relied in good faith upon his attorney's advice. That his attorney advised him in good faith is clear in that it was a very close question as to whether or not the information was privileged, and there was no applicable precedent to guide him. In summation, Nieukirk was clearly not contumacious nor was he trying to obstruct justice.

Appellant's reliance on *Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 256 N.E.2d 12, and *Chambliss v. Board of Fire & Police Commissioners* (1974), 20 Ill. App. 3d 24, 312 N.E.2d 842, is

misplaced. In *Kammerer* the court held that the Board was entitled to question the patrolman regarding evidence which, had this been a trial and not an administrative hearing, the patrolman could have refused to answer on self-incrimination grounds. At the time *Kammerer* was decided, it was already well established that a respondent in an administrative hearing could be questioned regarding evidence that would be barred on self-incrimination grounds at a trial. Thus, *Kammerer* differs from the instant case in two ways. First, it dealt with the self-incrimination protection, not a work product or attorney-client privilege. Second, precedent had already been established regarding self-incrimination. In the instant case Nieukirk's attorney had no precedent to guide him.

In *Kammerer*, the court correctly held that "if a public employee refuses to testify as to a matter concerning which his employer is entitled to inquire, he may be discharged for insubordination." (44 Ill. 2d 500, 506, 256 N.E.2d 12, 16.) In the instant case, the issue is whether or not the Board was in fact entitled to inquire about the second polygraph examination. Since there was no precedent to guide him and it was a close question, it was not contumacious conduct to in good faith fail to answer the question.

*Chambliss* is another case involving the self-incrimination protection and not the work product or attorney-client privilege. It is inapplicable to the instant case for the same reasons as *Kammerer*.

By our holding today we do not intend to indicate or imply any diminution in the duty of a public employee to respond to the appropriate direction of those in authority. Nor should our holding be considered in any measure to approve or sanction insubordination. It is solely because of the combination of unique circumstances present in the instant case that we believe it would be inappropriate to impose a penalty on Nieukirk. We believe that Nieukirk was not insubordinate and affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY and HEIPLE, JJ., concur.