Kelli **ROBERTSON** etc., et al., Plaintiffs,

v.

**YAMAHA MOTOR CORPORATION,
U.S.A. et al., Defendants.**

Civ. No. 91–4152–JLF.

United States District Court,
S.D. Illinois.

Aug. 19, 1992.

Drew C. Baebler, Schlichter Law Associates, St. Louis, Mo., for plaintiffs.

Kevin P. Krueger, G. Keith Phoenix, Sandberg, Phoenix & von Gontard, St. Louis, Mo., for defendants.

1. The statements of facts presented by both sides do not conflict. The Court concludes that the factual allegations surrounding the release of the two letters are not in dispute.

MEMORANDUM AND ORDER

FOREMAN, Senior District Judge:

Plaintiffs have moved this Court to reconsider its protective order entered on October 15, 1991. The protective order prohibited plaintiffs' counsel from disseminating or using copies of letters written to the defendants by their counsel. The Court concludes that: (1) the two letters fall within the attorney-client privilege; (2) defendants have not waived the privilege; (3) defendants are not barred by a Pennsylvania state court ruling from asserting that the privilege has not been waived.

*Facts* [1]

In 1984, Yamaha Motor Company, U.S.A., and Yamaha Motor Company, Ltd. (collectively "Yamaha"), were sued in a products liability action filed in the United States District Court for the Eastern District of Louisiana in an action entitled *Michael Allan Rantz et al. v. Yamaha Motor Company, Ltd. et al.*, Civil No. 84–2626 Sec. L (E.D.La.). The attorney for the plaintiffs in *Rantz* was Dean Sutherland. Sutherland sought the production of two documents [2] prepared by Michael Schmidt, an assistant general counsel of Yamaha. One of the these documents is a memorandum prepared by Schmidt regarding a meeting in Washington with representatives of the Consumer Products Safety Commission on the subject of three wheeled All Terrain Vehicles (ATVs). The second is a letter from Schmidt to Yamaha's outside counsel in Washington, DC, reviewing Yamaha's dealings with the CPSC on three wheeled ATVs.

Yamaha resisted the production of the Schmidt documents in the *Rantz* case on the grounds of attorney-client privilege. A magistrate ordered that the documents be submitted for *in camera* inspection. Counsel for Yamaha sent the memoranda along with a cover letter to the magistrate; counsel also sent a copy of the cover letter to Sutherland. Apparently, copies of the documents were included with the cover letter

2. These documents will be referred to as the Schmidt documents.

sent to Sutherland.[3] Sutherland never informed Yamaha's counsel that he received the documents. Subsequently, the magistrate refused to order the production of these documents on the grounds of attorney-client privilege.

After the Rantz litigation was terminated, Yamaha discovered that the documents were in the possession of an attorney involved in litigation against Yamaha in Texas. Further investigation revealed that the documents were passed by Sutherland to another attorney named John Cabaniss, who in turn gave the documents to the Texas attorney. On October 1, 1990, Yamaha obtained a temporary restraining order from the United States District Court for the Eastern District of Louisiana prohibiting Cabaniss from further disseminating the documents. On October 3, 1990, Cabaniss had passed the documents to a Pennsylvania lawyer, Shanin Specter. It is unclear whether the documents were sent to Specter before or after Cabaniss received notice of the temporary restraining order.

Specter was counsel in a products liability suit against Yamaha similar to this lawsuit. When Yamaha's counsel in the Pennsylvania case became aware that Specter had possession of copies of the memoranda, he filed a motion to suppress and for sanctions. The Pennsylvania state court denied the motion, finding that the attorney-client privilege as the documents had been waived because of the wide distribution of the documents. An article regarding the Pennsylvania court's ruling appeared shortly thereafter in Trial magazine. The article ended with the statement:

> The suits against Cabaniss and Sutherland are pending. Sutherland has reportedly agreed not to disseminate the documents until his case is resolved; Cabaniss is under a temporary restraining order. Specter appears to be under no such restraint.

Trial, February 1991, attached as Exhibit III to Plaintiff's Motion for Reconsideration.

Plaintiffs' counsel in this case obtained the documents from Specter. Affidavit of Drew Baebler, Exhibit VII to Plaintiffs' Motion for Reconsideration. When Yamaha's counsel became aware that plaintiffs' counsel had obtained copies of the memoranda, Yamaha promptly filed a motion for a protective order. The motion was granted, in part because the plaintiffs' failed to respond in a timely manner. Plaintiffs now move for reconsideration of the protective order.

■■■ Although motions for reconsideration serve a useful purpose, they should rarely be filed. A motion for reconsideration serves, for example, to correct manifest errors of law or fact or to present newly discovered evidence. *Johnson v. Heckler*, 607 F.Supp. 875, 877 (N.D.Ill. 1984), *aff'd.* 769 F.2d 1202 (7th Cir.1985). Such a motion is also appropriate when the court has made a decision outside the adversarial issues presented by the parties. *Wielgos v. Commonwealth Edison Co.*, 127 F.R.D. 135, 137 (N.D.Ill.1989), *quoting Above the Belt, Inc. v. Mel Bohannon Roofing Co., Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). "Such problems rarely arise and the motion to reconsider should be equally rare." *Above the Belt*, 99 F.R.D. at 101.

■■■ On the other hand, a motion for reconsideration is not an appropriate vehicle for reargument of the same points which the court has considered on the original motion and has rejected. *Instituto Nacional de Commercializacion Agricola (Indeca) v. Continental Illinois Bank and Trust Co.*, 38 Fed.R.Serv.2d 1087 (Callaghan) (N.D.Ill.1984). Nor should a motion for reconsideration be used to raise arguments that could have and should have been raised before the court made its decision. *In re Wildman*, 72 B.R. 700, 704 (Bankr.N.D.Ill.1987).

In this case, a motion for reconsideration will be entertained. The plaintiffs had filed their response on the same day that

---

**3.** The best explanation for this occurrence appears to be a clerical error.

the Court issued its order. Because the Court never fully addressed the merits of plaintiffs' contention that the memoranda are not privileged, and because a question of collateral estoppel has been raised, the Court will more fully explain the basis for the original ruling.

In civil cases based on diversity jurisdiction, a claim of privilege is decided based on the state law which provides the rule of decision as to the claim or defense. Fed. R.Evid. 501. "If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state privilege law applies to that item of proof." H.R.Conf. Rep. No. 1597, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7101. In this complaint apparently based on Illinois law, the Illinois law of privilege applies.

The first step in the inquiry of whether Yamaha is entitled to a protective order is to determine the Schmidt documents are covered by the attorney-client privilege.

The attorney-client privilege protects communications made by a client to an attorney under the following circumstances: (1) where legal advice of any kind is sought from an attorney in his capacity as such, (2) the communications relating to that purpose, (3) made in confidence by the client, (4) are at his instance permanently protected from disclosure by the client or the attorney, (5) unless that protection is waived. *People v. Adam* (1972) 51 Ill.2d 46, 280 N.E.2d 205. The person asserting the privilege has the burden of proving its existence. *Shere v. Marshall Field & Co.* (1974), 26 Ill.App.3d 728, 327 N.E.2d 92.

*Nieukirk v. Board of Fire & Police Commissioners,* 98 Ill.App.3d 109, 111, 423 N.E.2d 1259, 1261 (1981).

One Illinois appellate court has held that the attorney-client privilege applies only to communications made by the client to the attorney, and not by the attorney to the client.[4] *Dalen v. Ozite Corporation,* 230 Ill.App.3d 18, 171 Ill.Dec. 845, 594 N.E.2d 1365 (Ill.App.Ct.1992). This view of attorney-client privilege is too narrow.[5] As one commentator wrote,

it is generally held that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client. In fact, only rarely will the attorney's words be relevant for any purpose other than to show the client's communications circumstantially, or to establish an admission by the client by his failure to object. Accordingly, the simpler and preferable rule, adopted by a number of statutes and the Revised Uniform Evidence Rules (1974) and by the better reasoned cases, extends the protection of the privilege also to communications by the lawyer to the client.

E. Cleary, *McCormick on Evidence* § 89 at 212 (3d ed. 1984). *Accord,* G.C. Lilly, *An Introduction to the Law of Evidence* § 9.7 at 405 (1987); 2 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 503(b)[03] at 503–56 (discussing application of Supreme Court Standard 503); M. Graham, *Handbook of Federal Evidence* § 503.2 at 321 n. 4 (2d ed. 1986) (same).

The Illinois Supreme Court has defined privileged communications as those "between a party or his agent and the attorney for the party...." Ill.Supreme Court Rule 201(b)(2). The use of the phrase "between a party ... and the attorney" rather than "by a party ... to the attorney" indicates

---

**4.** The court did indicate that communications by an attorney to the client were covered by the work product privilege. Under this reasoning, the letter from Schmidt to Yamaha's outside counsel in Washington would be subject to attorney-client privilege. The memorandum by Schmidt regarding his attendance at a CPSC meeting, however, would not be subject to protection. The memorandum was neither a communication by a client to an attorney, nor was the memorandum prepared in anticipation of litigation.

**5.** *Dalen* was decided by the Second District. This Court is located in the Fifth District. Thus, the application of state law to this case does not require that the Court follow *Dalen,* if the Court determines that Illinois Supreme Court would rule differently.

that the attorney-client privilege should apply to communications by an attorney to the client. Therefore, the Court believes that the Illinois Supreme Court would not accept *Dalen*'s limitation on attorney-client privilege.

■ The Schmidt documents meet the other standards for attorney-client privilege. Both documents were written with the intention of communicating or receiving legal advice. While the legal advice contained in the documents does not pertain to pending litigation, the attorney-client privilege should not be so narrowly construed. Both documents relate to proceedings before a regulatory agency, the CPSC. Lawyers are routinely consulted regarding proceedings by administrative bodies; and the advice given in this regard is routinely considered legal advice. *Cf.* 16 C.F.R. § 1025.64–65 (allowing attorneys to practice before CPSC, while requiring that non-attorneys obtain approval before appearing at CPSC proceedings).

More importantly, it cannot be controverted that Yamaha intended the documents to be confidential. The documents were released precisely during a dispute over their confidentiality. Nor has Yamaha taken any measures which would disseminate the documents. Indeed, Yamaha has taken every opportunity to oppose further distribution of the documents. Under the circumstances, the intention of Yamaha to communicate with counsel in confidence cannot be doubted.

■ Since the documents are covered by the attorney-client privilege, the next question is whether the privilege has been waived.[6] *Dalen* is the only Illinois authority the Court has found on point. In *Dalen*, the appellate court rejected both the rule that mere inadvertent disclosure never waives the attorney-client privilege and the rule that any breach of confidentiality waives the privilege. *Dalen*, 594 N.E.2d at 1371. Rather, the court adopted a case-by-case balancing approach, weighing five factors: 1) the reasonableness of the precautions taken to prevent the disclosure; 2) the time taken to rectify the error; 3) the scope of the discovery; 4) the extent of the disclosure; 5) the overriding issue of fairness. *Id.* 594 N.E.2d at 1371.

The only factor weighing in favor of the plaintiffs is the reasonableness of the precautions taken to prevent the disclosure. Although the record is unclear as to how the disclosure occurred, it appears that someone at Yamaha's Louisiana counsel's office acted negligently or worse in allowing the document to be released. Once released, however, Yamaha has taken every action possible to prevent further dissemination of the documents. Moreover, the only documents involved are the two documents which Yamaha wished to keep confidential in Louisiana. This is not a case where a litigant has opened up his files and then, as an afterthought, decided to claim privilege as to those documents later found to be harmful.

Most importantly, the issue of fairness weighs heavily in the Court's mind. Cabaniss sent the Schmidt documents to Specter at most only hours before he received a copy of an order restraining him from taking such an action. Moreover, both Cabaniss and Sutherland should have returned the documents to Yamaha as soon as they discovered the documents were accidently mailed to them. Yamaha's negligence pales in comparison to the actions of Cabaniss and Sutherland.[7] Fairness requires a finding that the privilege has not been waived.

---

6. There is potentially a conflicts of law question involved here, since the documents were inadvertently released in Louisiana. However, Federal Rule of Evidence 501 clearly requires the application of Illinois law to the question. If Illinois law would look to Louisiana law to see if the privilege was waived, the Court would defer to the reasoning apparently adopted by the Eastern District of Louisiana in the case brought against Cabaniss and Sutherland, and find that the inadvertent disclosure did not waive the privilege. Since the parties have not argued that this Court should look to Louisiana law, the Court has decided the motion on the basis of Illinois law.

7. The actions of Cabaniss and Sutherland do not reflect on plaintiffs' counsel in this case. However, the fact remains that if Cabaniss and Sutherland acted properly, plaintiffs in this case would not be in receipt of the documents.

Plaintiffs have one more arrow in their quiver. Plaintiffs argue that Yamaha is estopped from arguing that the documents are covered by the attorney-client privilege because Yamaha had a full and fair opportunity to litigate this issue in the Pennsylvania proceeding, and lost. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a different suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also* Restatement (Second) of Judgments § 29 (1982).

Plaintiffs cannot prevail on their collateral estoppel argument because the Pennsylvania court's ruling on these documents was not essential to its judgment. Plaintiffs have not presented a judgment from the Pennsylvania court, only an order on a motion. Even assuming that a judgment issued in favor of the plaintiffs, that judgment did not determine conclusively whether the attorney-client privilege as to the Schmidt documents was waived. The Pennsylvania ruling amounts to no more than a ruling on the admissibility of certain evidence. The admissibility of evidence may be relitigated, subject only to the constraints of the principles of law of the case and *stare decisis*.

The plaintiffs face an additional burden with their collateral estoppel argument. The Pennsylvania court was not the first court to consider whether the attorney-client was waived as to the Schmidt documents. The Eastern District of Louisiana had previously granted Yamaha's motion for partial summary judgment that Yamaha did not waive the attorney-client privilege. *Yamaha Motor Corporation v. Sutherland*, No. 90–4326 minute order (E.D.La. Feb. 6, 1991). With inconsistent judicial rulings, the doctrine of collateral estoppel does not apply. *Cf.* Restatement (Second) of Judgments § 29(4) (collateral estoppel should not apply where there are inconsistent judgments); *Parklane Ho-*

*siery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (allowing offensive collateral estoppel may be unfair if the judgment relied upon as a basis for estoppel in inconsistent with one or more previous judgments).[8]

For these reasons, Plaintiffs' Motion for Reconsideration is DENIED. Plaintiffs shall comply with the protective order previously issued by the Court, if they have not already done so, within five days of this order.

IT IS SO ORDERED.

---

**8.** The Court notes that these authorities refer to judgments rather than other decisions of a court. This points out once again the problem with plaintiffs' collateral estoppel argument. The Pennsylvania decision was not essential to a judgment.