MARK G. DALEN, Plaintiff-Appellee, v. OZITE CORPORATION, Defendant-Appellant.

Second District No. 2—91—1018

Opinion filed June 12, 1992.

Kwiatt & Silverman, Ltd., of Chicago (Scott E. Tuckman, of counsel), for appellant.

Kenneth T. Kubiesa, of Kubiesa & Power, Ltd., of Westmont (Barbara J. Gosselar, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Ozite Corporation, defendant, appeals after the trial court granted Mark G. Dalen's, plaintiff's, motion for summary judgment. Dalen's complaint sought judgment for payment of principal and interest owed on two 9.25% subordinated notes executed by Ozite Corporation (Ozite) in favor of Dalen. The trial court entered summary judgment in favor of Dalen on June 26, 1992, in the amount of $182,035.54 plus costs of suit.

Ozite raised six errors on appeal, which we consolidate into four issues: (1) whether the trial court erred by not granting Ozite's motion to dismiss filed pursuant to section 2—619(a)(3) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3)) and by later denying Ozite's motion to reconsider; (2) whether the trial court erred by denying Ozite's motion for leave to file a counterclaim and a second affirmative defense; (3) whether the trial court erred by finding that Ozite had waived the attorney-client privilege with respect to a memorandum drafted by Ozite's attorney and ordering that Ozite produce the memorandum to Dalen; and (4) whether the trial court erred by concluding that the terms of the notes unambiguously supported

Dalen's claim and subsequently entering summary judgment for Dalen. Dalen urges this court to affirm the trial court and argues that none of the errors alleged by Ozite have merit. Dalen has also submitted a motion with this court to strike parts of Ozite's brief which, along with Ozite's response, we ordered to be taken with the case. We grant Dalen's motion and affirm.

On March 2, 1990, Dalen filed a complaint in Du Page County circuit court seeking judgment for payment of principal and interest owed on two 9.25% subordinated notes executed on February 17, 1987, and April 1, 1987, by Ozite in favor of Dalen. Under the terms of the notes, Dalen was to be paid semiannual interest, and payment of the principal and any unpaid interest was due on each note on March 17, 1989.

Ozite filed a motion to dismiss pursuant to section 2—619(a)(3) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3)) on April 17, 1990. Ozite argued that the instant cause should be dismissed because of a similar consolidated cause pending in Cook County. The trial court denied Ozite's motion to dismiss on June 11, 1990. Ozite also filed a "Motion to Dismiss Complaint for Non-Payment of Note" on July 2, 1990. On August 9, 1990, the trial court denied Ozite's second motion to dismiss and denied Ozite's motion to reconsider.

Ozite filed an "Answer to Complaint and Affirmative Defenses" on August 24, 1990, in which Ozite argued that no payment was due on the notes because of the existence of senior indebtedness, to which Dalen's right to payment was subordinate.

On December 12, 1990, Dalen requested production of certain documents by Ozite. On March 5, 1991, after Ozite had not complied with the request, Dalen filed a motion to compel production. Ozite agreed to produce the requested documents within one week, and the trial court so ordered. Ozite then filed objections to Dalen's requests. On March 13, 1991, the trial court ordered Ozite to produce the requested documents within two weeks. Thereafter on April 15, 1991, Ozite provided Dalen's attorney with the opportunity to review all of its files at Ozite's offices in Libertyville. In the course of doing so, Dalen's attorney was allowed to examine a four-page memorandum dated February 1, 1991, which was written by one of Ozite's attorneys. The memorandum discussed certain litigation in Maryland which was based on notes similar to those at issue in the instant case. Sometime after Dalen's attorney had examined the document, Ozite's attorney objected to his receiving a copy. The memorandum outlined the limitations of Ozite's defenses and the attorney's opinion as to the

proper and likely interpretation of the notes. Following a dispute by the parties as to whether the document was privileged and, if so, whether any privilege had been waived, the trial court held on May 9, 1991, that Ozite had waived the attorney-client privilege as to the document and ordered Ozite to produce the memorandum to Dalen's attorney.

On March 13, 1991, Ozite filed a "Motion for Leave to File Counterclaim and Second Affirmative Defense." In that motion, Ozite requested that any amount claimed by Dalen to be owed by Ozite be set off against the amount owed, if any, by Dalen to Ozite. The motion recited the same allegations which Ozite asserted in the Cook County litigation between Ozite and Dalen. On April 25, 1991, the trial court denied Ozite's motion.

On June 26, 1991, the trial court heard argument on Dalen's motion for summary judgment and Ozite's cross-motion for summary judgment. The trial court determined that the provisions of the notes were clear and unambiguous, that it required no extrinsic evidence to construe the intent of the parties, and that the notes required Ozite to pay Dalen unless Ozite was engaged in insolvency proceedings. Judgment in favor of Dalen was entered on June 26, 1991, in the amount of $182,035.54 plus costs of suit. The trial court denied Ozite's cross-motion for summary judgment. Ozite filed this timely appeal.

### DALEN'S MOTION TO STRIKE PARTS OF OZITE'S BRIEF

We first address Dalen's motion to strike certain sections of Ozite's brief. Dalen argues that this court lacks jurisdiction to entertain Ozite's appeal from three of the orders entered by the trial court because Ozite's notice of appeal refers only to the June 26, 1991, order which granted summary judgment to Dalen. Dalen urges this court to conclude that we have no jurisdiction to review the June 11, 1990, order which denied Ozite's section 2—619(a)(3) motion to dismiss; the August 9, 1990, order which denied Ozite's motion to reconsider and Ozite's second motion to dismiss; and the April 25, 1991, order which denied Ozite's motion for leave to file a counterclaim and a second affirmative defense. Dalen argues that only two orders are reviewable by this court: the June 26, 1991, order which granted summary judgment to Dalen and denied Ozite's motion for cross-summary judgment and which Ozite specifically noted in its notice of appeal; and the May 9, 1991, order which required Ozite to produce the disputed document to Dalen. Ozite did not note the May 9, 1991, order in its notice of appeal, but Dalen concedes that it is reviewable as a

step in the procedural progression leading to the June 26 final judgment.

Ozite responds that an appeal from a final judgment draws into question all prior nonfinal orders which produced the judgment. Ozite also argues that any deficiency in the notice of appeal is one of form and not of substance. Ozite asks this court to allow it to file an amended notice of appeal if we find defects in the original notice of appeal.

We begin by noting that Supreme Court Rule 303(c)(2) states:

"(c) Form and Contents of Notice of Appeal

* * *

(2) It shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (134 Ill. 2d R. 303(c)(2).)

The Illinois Supreme Court held in *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, that a notice of appeal need not specify a particular order to confer jurisdiction if the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed. (*Burtell,* 76 Ill. 2d at 434.) "[T]he unspecified judgment is reviewable if it is 'a step in the procedural progression leading' to the judgment specified in the notice of appeal." (*Burtell,* 76 Ill. 2d at 435, quoting *Elfman Motors, Inc. v. Chrysler Corp.* (3d Cir. 1977), 567 F.2d 1252, 1254.) In *Burtell,* the supreme court held that the notice of appeal at issue was sufficient to confer jurisdiction because the earlier order sought to be reviewed, but which was not mentioned in the notice of appeal, was an order for an accounting. The court noted that the notice of appeal referred to the final judgment, which was based on the accounting. *Burtell,* 76 Ill. 2d at 431-36.

In *Village of Lisle v. Village of Woodridge* (1989), 192 Ill. App. 3d 568, 572, this court reviewed *Burtell* and three similar holdings: *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062 (where notice of appeal was from a summary judgment order as to certain counts and did not refer to an earlier order dismissing other counts, a reviewing court lacks jurisdiction to consider the earlier dismissal order that was not otherwise timely appealed); *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 442 (pursuant to Rule 303(c)(2), a notice of appeal which referred to the dismissal order as to one defendant but not the earlier dismissal order as to another defendant did not bestow jurisdiction on the reviewing court to consider the separate, earlier dismissal order not mentioned in the notice of appeal); and *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 61 (failure to mention an earlier order dismissing a counterclaim

in the notice of appeal seeking review of a summary judgment order deprived the reviewing court of jurisdiction to consider the dismissal order). Based on those holdings, we determined in *Village of Lisle* that we were without jurisdiction to consider any issues raised regarding a September 6, 1988, dismissal order because the notice of appeal referred only to the October 27, 1988, summary judgment order and requested relief from that order only. *Village of Lisle*, 192 Ill. App. 3d at 572.

■ Similarly here, we agree with Dalen that our jurisdiction is limited to issues raised regarding the June 26, 1991, order which granted summary judgment to Dalen and the earlier May 9, 1991, order concerning the disputed document because Ozite's notice of appeal only noted the June 26 (incorrectly written in the notice as June 28), 1991, order. We believe that under *Burtell* and its progeny, the May 9, 1991, order is a step in the procedural progression leading to the June 26, 1991, order and that therefore the May 9, 1991, order is properly before this court. However, the orders of June 11, 1990; August 9, 1990; and April 25, 1991, are not steps in the procedural progression leading to the June 26, 1991, summary judgment order. All three orders focused on matters *outside* the scope of the cause at issue. Ozite was apparently attempting to either dismiss the instant action because of the pending action in Cook County, or include the separate issues raised there in this action. The June 11, 1990, order denied Ozite's section 2—619(a)(3) motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(3)). The August 9, 1990, order denied Ozite's subsequent motion to reconsider and denied Ozite's second motion to dismiss. The April 25, 1991, order denied Ozite's motion to file a counterclaim and second affirmative defense.

In holding that our jurisdiction is limited to the May 9, 1991, and June 26, 1991, orders, we note that although Ozite could not have appealed the June 11, 1990, August 9, 1990, or April 25, 1991, orders because each lacked the requisite Rule 304(a) (134 Ill. 2d R. 304(a)) language regarding finality and appealability, Ozite could have appealed each order following the June 25, 1991, summary judgment by simply including references to each in its notice of appeal.

Cases cited by Ozite are inapposite to our conclusion. In *Burtell*, the court considered an accounting order even though the accounting order was not referred to in the notice of appeal because the accounting was a procedural step leading to the final order, which was noted in the notice of appeal. (*Burtell*, 76 Ill. 2d at 431-36.) In *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, this court held that we had jurisdiction to consider an order dismissing the complaint with prejudice

because the notice of appeal sought review of an order denying reconsideration of that very order. (*Pickle*, 106 Ill. App. 3d at 737.) Finally, in *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, the court held that it had jurisdiction to consider an order not referred to in the notice of appeal because the actual order appealed was an order denying a motion to vacate the prior order. (*Lakeview*, 134 Ill. App. 3d at 804-05.) In all three cases cited by Ozite, the court found jurisdiction to consider an order that was not referred to in the notice of appeal because the order was a step in the procedural progression leading to the order referred to in the notice of appeal. Such is simply not the case here.

■ Lastly, within its response to Dalen's motion, Ozite made a motion to file an amended notice of appeal. Ozite's motion is denied as being untimely under Supreme Court Rule 303(c)(4) (134 Ill. 2d R. 303(c)(4)).

We grant Dalen's motion to strike. We are therefore precluded from considering the first two issues raised by Ozite and limit our review to issues regarding the memorandum and the grant of summary judgment to Dalen.

### THE MEMORANDUM

At issue is whether a four-page memorandum authored by one of Ozite's attorneys, and discovered by one of Dalen's attorneys, is protected by the attorney-client privilege or work product doctrine, and, if so, whether Ozite waived the protection by granting Dalen's attorney the opportunity to review its corporate files.

Before addressing the merits of this issue, we initially agree with Dalen that Ozite was not prejudiced by having to produce the memorandum to Dalen because, although Dalen used it to support his motion for summary judgment, the trial judge did not consider it in deciding the case. When the trial judge granted summary judgment to Dalen at the June 26, 1992, hearing, the judge stated:

"First of all, I agree with [Ozite] that there really is *no reason for this court to consider Mr. Silverman's memorandum* because of the fact that it's only used if parol evidence is required, and this court is fully capable of rendering an opinion on what I see as a rather unambiguous note.

The question of whether or not Mr. Silverman's memorandum is a judicial admission is one that I don't think has to be resolved at this time because this Court finds that the note is unambiguous." (Emphasis added.)

This quotation plainly refutes the allegations made by Ozite in its brief that "the mere fact that Judge Thomas read the memorandum has tainted his ability to make an unbiased decision" and "caused irreparable harm" to Ozite.

Even if we were to consider the merits of the issue, we find no reason to reverse the trial court. As a first step in our analysis, we describe the subject memorandum. It is dated February 1, 1991, and is from one of Ozite's attorneys to five apparent officers of the Ozite Corporation. It concerned pending litigation in Maryland over a similarly written $33,000 note and included certain conclusions by the attorney:

> "After we win or lose the motion to dismiss and/or transfer, we could then *attempt* to defend the note on the basis that there exists substantial senior debt to which the note is subordinate. Accordingly, it can be argued that suit on the note is premature until such time as senior debt is retired. This *may* be a specious defense insofar as collection could perhaps be frustrated forever by maintaining 'senior debt.' My thought is that the Court would interpret the subordination provision to mean that in case of a liquidation, bankruptcy (or other such insolvency proceeding), the note would *then* be subordinate to senior debt. Those note provisions relate to preference or payment rather than restricting collection of the note.
>
> \*\*\* My opinion is the note is not really defendable except to delay via jurisdictional questions." (Emphasis in original.)

Dalen's attorney found the subject memorandum while looking through file cabinets of documents at Ozite's office on April 15, 1991. Apparently, rather than comply with Dalen's request for certain documents, originally tendered on December 12, 1990, Ozite allowed Dalen the opportunity to review its corporate files. The parties' dispute over whether the memorandum was privileged was resolved by the trial court on May 9, 1991, when the court found that Ozite had waived the attorney-client privilege as to the document. The court ordered Ozite to produce the document to Dalen.

 While both parties and the trial court applied an attorney-client privilege analysis, we believe that a work product analysis applies instead. Illinois and Federal courts recognize Wigmore's definition of the attorney-client privilege:

> "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) *made in confidence* (5) *by the client,* (6) are at his instance permanently protected (7) from

disclosure by himself or by the legal advisor, (8) except the protection be waived." (Emphasis added.) (*People v. Adam* (1972), 51 Ill. 2d 46, 48.)

(*Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 103, *rev'd* (1991), 145 Ill. 2d 32 (reversed appellate court on equitable grounds rather than attorney-client privilege); *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989* (N.D. Ill. 1990), 133 F.R.D. 515, 518.) Since the memorandum at hand was not written *by* Ozite, the client, but instead was written *for* Ozite by one of its attorneys, the attorney-client privilege does not apply. Instead, we believe the work product doctrine, which is "distinct from and broader than the attorney-client privilege," applies to the subject memorandum. (*In re Air Crash*, 133 F.R.D. at 519.) The work product doctrine applies to documents prepared by either client or attorney in anticipation of litigation or trial. (*In re Air Crash*, 133 F.R.D. at 519; see 134 Ill. 2d R. 201(b)(2) (under Supreme Court Rule 201(b)(2), material prepared by or for a party in preparation for trial is not subject to discovery if it contains or discloses "the theories, mental impressions, or litigation plans of that party's attorney").) The memorandum was prepared by Ozite's attorney in anticipation of litigation, albeit different litigation than this case, and was therefore protected by the work product doctrine. But see *B & J Manufacturing Co. v. F M C Corp.* (N.D. Ill. 1975), 21 Fed. R. Serv. 2d 1119, 1119-20 ("[p]rotection of the opinions given by attorneys to their clients gives rise to similar benefits [of the attorney-client privilege], and consequently has been treated as part of the privilege"); see *In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel* (N.D. Ill. 1987), 666 F. Supp. 1148 (*International Harvester*); *Mendenhall v. Barber-Greene Co.* (N.D. Ill. 1982), 531 F. Supp. 951.

We next consider whether Ozite waived the protection of the work product doctrine by allowing Dalen's attorney the opportunity to review its corporate files at Ozite's offices, at which time Dalen's attorney discovered the memorandum. Both parties invoke Federal case law since Illinois courts have been silent on the issue. Ozite argues on appeal that the disclosure was inadvertent and that therefore a knowing waiver did not occur, citing *In re Sealed Case* (N.D. Ill. 1988), 120 F.R.D. 66, and *Mendenhall* (531 F. Supp. 951). Dalen responds that Ozite's actions in allowing unlimited access to corporate files instead of producing specific files waived whatever protection the memorandum had, citing *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.* (N.D. Ill. 1990), 132 F.R.D. 204, and *International Harvester*, 666 F. Supp. 1148.

We briefly review the case law cited, all of which refers to waiver of the attorney-client privilege but which we believe applies to waiver of the work product doctrine as well. In *Mendenhall*, the court held the "mere inadvertent production does not waive the privilege." (*Mendenhall*, 531 F. Supp. at 954.) The court reasoned that "if we are serious about the attorney-client privilege and its relation to the *client's* welfare, we should require more than \*\*\* negligence by *counsel* before the client can be deemed to have given up the privilege." (Emphasis in original.) (*Mendenhall*, 531 F. Supp. at 955.) The *In re Sealed Case* court invoked the *Mendenhall* holding that inadvertent production does not waive the privilege. (*In re Sealed Case*, 120 F.R.D. at 72.) We note that one court has stated that *Mendenhall* does not represent the majority rule. *Hartford Fire Insurance Co. v. Garvey* (N.D. Cal. 1985), 109 F.R.D. 323, 329. But see *Georgetown Manor, Inc. v. Ethan Allan, Inc.* (S.D. Fla. 1991), 753 F. Supp. 936, 938 ("the better reasoned rule is that of *Mendenhall*").

■ The court in *Golden Valley Microwave Foods* reviewed three general approaches that courts have used to analyze similar questions of waiver of the attorney-client privilege: a subjective analysis, an objective analysis, and a balancing test. (*Golden Valley*, 132 F.R.D. at 208-09.) Under a subjective analysis, inadvertent disclosure can never result in a true waiver because "there was no intention to waive the privilege, and one cannot waive the privilege without intending to do so." (*Golden Valley*, 132 F.R.D. at 208, citing *Connecticut Mutual Life Insurance Co. v. Shields* (S.D.N.Y. 1955), 18 F.R.D. 448, 451.) Under an objective analysis, the court need only confirm that the document was made available to opposing counsel; "the 'confidentiality' of the document has been 'breached' by the disclosure, thereby destroying the basis for the continued existence of the privilege." (*Golden Valley*, 132 F.R.D. at 208, citing *Underwater Storage, Inc. v. United States Rubber Co.* (D.D.C. 1970), 314 F. Supp. 546, 548-49.) And lastly, under the balancing test, a court considers five factors to determine if a party waived the attorney-client privilege: "(1) the reasonableness of the precautions taken to prevent the disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." (*Golden Valley*, 132 F.R.D. at 209, citing *Bud Antle, Inc. v. Grow-Tech Inc.* (N.D. Cal. 1990), 131 F.R.D. 179, 193.) The *Golden Valley* court then applied the latter two approaches, the objective and balancing approaches, and concluded that the privilege had been waived. The court noted that the "[c]onfidentiality [of the disclosed document] simply has been lost"

and that insufficient precautions to protect that confidentiality had been taken. *Golden Valley*, 132 F.R.D. at 209.

The court in *International Harvester* found that the attorney-client privilege had been waived since opposing counsel was allowed to examine the document. (*International Harvester*, 666 F. Supp. at 1155.) The court stated that "[o]rdinarily a party that allows free access to its files cannot later claim that some of the documents they contained were privileged." (*International Harvester*, 666 F. Supp. at 1154.) The court concluded that the lax treatment of the documents at issue was "inconsistent with any intention to maintain their confidentiality." *International Harvester*, 666 F. Supp. at 1150; see *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.* (N.D. Ill. 1974), 62 F.R.D. 454, 457-48 (while the court found no waiver of the privilege under the facts, the court noted that "when a party's conduct reaches a certain point of disclosure fairness requires that the privilege should cease whether the party intended that result or not").

In the instant case, we agree with Dalen that Ozite has waived any privilege regarding the confidentiality of the memorandum. In so deciding, we adopt the "balancing test" set forth in *Golden Valley*. The two other approaches, the objective and subjective approaches, would appear to result in decisions based on mere mechanical application rather than a judicial reason and fairness. Applying the balancing test here, we note that Ozite allowed Dalen's attorney free access to its files after Dalen had made numerous requests for documents. At the hearing before the trial judge, Ozite's counsel argued that he did not have time to purge the files of confidential material before Dalen's attorney reviewed them and that the disclosure of the memorandum was therefore inadvertent. Under the facts presented here, we find that Ozite's and Ozite's counsel's conduct was completely inconsistent with their claim of confidentiality and conclude that Ozite waived the protection of work product doctrine as to the memorandum. The trial court properly ordered Ozite to produce the memorandum to Dalen.

As an observation, we note that the attorney's memorandum "played the bad music" for his client, Ozite, but that Ozite was either not listening or chose not to listen. It is no wonder that court dockets are crowded today when clients continue to marshall their cases through the trial court *and* up to the appellate court in the face of such clear guidance to the contrary from their attorneys.

## SUMMARY JUDGMENT

At issue is whether the trial court erred in granting summary

judgment to Dalen and in denying Ozite's cross-motion for summary judgment. The court determined that the two notes were clear and unambiguous and therefore did not consider the extrinsic evidence offered by Dalen to support his claim. The two notes are identical in substance and were due on March 17, 1989. One note is dated February 17, 1987, and the other April 1, 1987. The court concluded that the notes required payment to Dalen when due unless Ozite was engaged in insolvency proceedings, which the company was not, and awarded Dalen $182,035.54 plus costs of suit.

Ozite argues that the trial court's construction of the notes was erroneous as a matter of law and that the proper interpretation of the clause is that the notes are subordinate to prior payment in full of all existing senior indebtedness. Both parties agree that senior indebtedness in the amount of approximately $2,500,000 exists. Dalen argues that the trial court properly granted summary judgment to him since the notes are clear and unambiguous. Dalen argues that the trial court properly found that the two notes require payment when due, absent Ozite's dissolution, liquidation or reorganization. Dalen also raises two additional arguments as to why this court should affirm the trial court, but we need not consider them because we agree that the notes are clear and unambiguous.

Summary judgment is proper where there is no genuine issue of material fact and judgment may be granted as a matter of law. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 165.) The trial court must construe all pleadings, depositions, affidavits and admissions strictly against the movant. (*Mitchell*, 142 Ill. 2d at 165.) Where other facts are not in dispute, construing a contract as a matter of law may be suitable for summary judgment. (*National Underground Construction Co. v. E.A. Cox Co.* (1991), 216 Ill. App. 3d 130, 134.) To withstand a motion for summary judgment, the nonmoving party must present some factual basis that arguably may entitle him to judgment. (*Harkins v. System Parking, Inc.* (1989), 186 Ill. App. 3d 869, 872.) "Here, then, our function is to determine whether the trial court correctly found that no genuine issue of material fact existed and also to determine whether judgment was correctly entered for the moving party as a matter of law." *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 241; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

After argument on each party's motion for summary judgment, the trial judge stated that, without considering the extrinsic evidence offered by Dalen, "this Court finds that the note[s] [are] unambiguous and the subordination clause, the senior indebtedness clause[,] applies

to insolvency proceedings." The court reasoned that "the practicalities of the matter are such that there could always be senior indebtedness to defeat collection." We agree.

While Ozite relies on the note's introductory subparagraph of paragraph 1 to argue that the notes precluded any collection until all senior indebtedness was paid, we agree with the trial court that such an interpretation could theoretically allow Ozite to postpone payment on the notes indefinitely. When all of the provisions of paragraph 1 are read together, it is clear that the notes are subordinate to senior debt only in case of Ozite's insolvency.

Cases cited by Ozite in support of its interpretation of the notes are inapposite to our conclusion. In *Federal Deposit Insurance Corp. v. United States National Bank* (9th Cir. 1982), 685 F.2d 270 (*FDIC*), the issue concerned the status of a defrauded subordinate note holder when the borrower bank failed. The court held that the alleged fraud, if proven, would justify rescission of the note and placement of the holder on an equal footing with other general creditors. (*FDIC*, 685 F.2d at 275-76.) The court's general discussion of the validity of subordinated notes focused on the language of the particular note at issue, which unambiguously subordinated the holder's right of payment to senior liabilities in the event of the failure of the borrower bank. (*FDIC*, 685 F.2d at 273.) Therefore, *FDIC* is plainly distinguishable from the instant case.

In addition, Ozite cites numerous cases which stand for general contract law principles. We accept this case law but fail to see how it supports Ozite's position on appeal as none of the cases deal with subordinated notes like the notes at issue. *Wishnoff v. Guardian Savings & Loan Association* (1975), 34 Ill. App. 3d 107 (construction of certain interest provisions of a note); *Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1 (construction of a release agreement in conjunction with stock ownership); *W.H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87 (construed the terms of a contract for construction of a sanitary sewer project); *Wheeling Trust & Savings Bank v. Citizens National Bank* (1986), 142 Ill. App. 3d 333 (construed an interest rate provision in an extension agreement to a promissory note).

In fact, the trial court relied on the very principles of contract law that Ozite argues these cases stand for in construing these particular notes. The court did not rewrite the note (*Wishnoff*, 34 Ill. App. 3d at 110), nor did it consider extrinsic evidence since it considered the terms of the note to be clear and unambiguous (*Shultz*, 156 Ill. App.

3d at 10; *Wheeling Trust,* 142 Ill. App. 3d at 336; *W.H. Lyman,* 131 Ill. App. 3d at 93).

Finally, Ozite's reliance on *In re Roth* (N.D. Ill. 1986), 56 Bankr. 876, and *Smith v. Shoreline Printers & Publishers, Inc.* (1955), 6 Ill. App. 2d 290, is misplaced as neither case applies to the case at hand. The *Roth* court construed a loan agreement and a note related to certain construction financing for a development. The issuance of the final construction loan would have triggered the obligation to pay on the note, which was executed to provide a commission for the lender who arranged the preliminary and final construction financing. However, the court in *Roth* held that the payment on the note was not due, because approval was never granted for final construction financing, and the condition precedent for payment had therefore not occurred. (*Roth,* 56 Bankr. at 883.) The trial court in the instant case did not construe the right to payment under the notes to be conditional as in *Roth.* Rather, the court concluded that payment was required on the due date unless Ozite was dissolving, liquidating or reorganizing, in which case the subordination clause would preclude payment until all senior debt was paid. *Roth,* therefore, does not apply to the instant case.

Similarly, *Smith v. Shoreline* does not apply to this case because the court there did not even construe the subordination clause in the note at issue. The only issue in *Smith* was whether the party who executed the note had authority to enter into such an agreement at all. *Smith,* 6 Ill. App. 2d at 294-95.

We conclude that the trial court properly granted Dalen's motion for summary judgment.

For the above reasons, we therefore affirm the judgment of the circuit court of Du Page County.

Affirmed.

NICKELS and BOWMAN, JJ., concur.