THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERICK L. MURRY, Defendant-Appellant.

Second District  No. 2—98—0196

Opinion filed June 16, 1999.—Rehearing denied July 6, 1999.

312

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Jane M. Brennan, of Naperville, for the People.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Erick Murry, was found guilty of the unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)). Defendant appeals, arguing that his conviction should be reversed and the cause remanded for a new trial because a *per se* conflict of interest arose when his attorney represented both defendant and two codefendants during preliminary hearings. We disagree, and we affirm.

Defendant, codefendant Shenell Washington and codefendant Joaquin Smith were all charged by information with the unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)) and the unlawful possession of drug paraphernalia (720 ILCS 600/3.5 (West 1996)). The basis for these charges stems from the fact that defendant and codefendants were found on August 7, 1997, at Washington's home with cocaine, a pipe, and other drug paraphernalia.

On August 18, 1997, a probable cause hearing was held, and defendant and codefendants were represented by one public defender, Martin Shaffer. The trial court found that there was probable cause,

and an arraignment for defendant and codefendants was held on September 4, 1997.

At the arraignment, Shaffer again represented defendant and the two codefendants. Defendant, who was in custody and not present in court, and codefendants pleaded not guilty to the two charges. The trial court then set the matter over to October 8, 1997.

At the October 8, 1997, proceedings, Shaffer filed a motion to terminate the appointment of the public defender and to appoint conflict counsel. The trial court granted the motion and appointed a new attorney for codefendant Washington and another attorney for codefendant Smith. Shaffer continued to represent defendant.

At the trial, codefendant Washington testified. Washington admitted that she pleaded guilty in exchange for probation and that she was a recovering drug addict. Washington was asked about the statement she made to police, and she admitted that she never indicated in her written statement that defendant brought the cocaine into her apartment. Washington contended in her written statement only that the drugs did not belong to her and that someone else brought the drugs into her home. The problem that defendant alleges arose when the following dialogue took place:

"MR. SHAFFER: Well, his name isn't mentioned in your written? [sic]

WASHINGTON: It's not mentioned, but I do recall talking with you about the drugs not being mine and you saying that you were sure."

Shaffer objected, providing no basis for the objection, and the trial court ruled that defendant's answer was not responsive.

On redirect examination, the assistant State's Attorney asked Washington some questions and the problem defendant alleges arose as follows:

"MR. MORRISON [Assistant State's Attorney]: When was the first time that you mentioned Erick Murry that you recall?

WASHINGTON: When I was trying to talk with him about that.

MR. MORRISON: When you say 'him,' who are you talking about?

WASHINGTON: Mr. Shaffer when he was appointed my public defender, but he said he wouldn't be able.

\* \* \*

MR. MORRISON: Did you tell Mr. Shaffer that Erick Murry brought drugs into your house?

WASHINGTON: I told him that they weren't my drugs and that Erick had him [sic] in his socks, yes."

Shaffer never objected to this testimony.

Codefendant Smith then testified, and, during a discussion among

Shaffer, the trial court and the assistant State's Attorney about impeaching codefendant Smith, Shaffer asked for a mistrial because, during cross-examination, Washington had alluded to a conversation that Shaffer and Washington allegedly had. Shaffer indicated that he did not remember any such conversation and that he was afraid he could be called as a witness. The trial court denied Shaffer's oral motion for a mistrial. However, before the testimony of codefendant Smith continued, the trial court did instruct the jury to disregard the statements Washington made on cross-examination.

On November 4, 1997, at the close of the trial, the jury found defendant guilty of the unlawful possession of a controlled substance, and the trial court entered judgment on the jury's verdict. On December 4, 1997, defendant then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In this motion, defendant argued that the trial court erred in denying his motion for a mistrial.

On December 9, 1997, defendant's motion was denied, and defendant was sentenced to four years in prison with credit for time served and good time credit. On January 8, 1998, defendant filed a motion to reconsider the sentence, and the trial court denied the motion on February 13, 1998. Defendant then filed this timely appeal.

■ We first must address whether or not a *per se* conflict of interest arose because Shaffer represented defendant and codefendants during preliminary hearings. Under the sixth amendment to the United States Constitution, a criminal defendant is entitled to the undivided loyalty of counsel who is free from conflicting interests or inconsistent obligations. *People v. Hernandez,* 246 Ill. App. 3d 243, 249 (1993). When a defendant's counsel has represented a State's witness in prior proceedings a *per se* conflict of interest will arise if the representation of the defendant is contemporaneous with the representation of the State's witness. *Hernandez,* 246 Ill. App. 3d at 249.

■ Here, Shaffer was not representing both defendant and codefendants at the time of trial. Rather, Shaffer only represented defendant, and codefendants were each given their own independent representation. We conclude that no *per se* conflict of interest existed because Shaffer was not contemporaneously representing both defendant and codefendants.

■ We next must address whether an actual conflict of interest arose because Shaffer represented defendant and codefendants in prior proceedings. Initially, we note that there is a second class of alleged conflicts aside from *per se* conflicts of interest. *People v. Spreitzer,* 123 Ill. 2d 1, 17 (1988). These alleged conflicts generally involve joint or multiple representation of the codefendants. *Spreitzer,* 123 Ill.

2d at 17. In order to prevail on a claim of ineffective assistance of counsel due to joint or multiple representation, the defendant must establish that there was an actual conflict of interest manifested at trial. *In re T.M.*, 210 Ill. App. 3d 651, 654 (1991). That is, a defendant must show that an actual conflict of interest affected his attorney's performance. *Spreitzer*, 123 Ill. 2d at 17.

■ We conclude, as explained below, that no actual conflict of interest arose. No actual conflict of interest was manifested at trial because (1) Shaffer effectively cross-examined Washington, (2) the attorney-client privilege prevented the disclosure of Washington's conversation with Shaffer, and (3) the trial court's admonishment to the jury cured any conflict.

We note that no actual conflict of interest existed because Shaffer conducted an effective cross-examination of Washington, the witness who revealed the alleged conflict. In joint or multiple representation cases, the primary concern is whether or not the defendant's attorney conducted a thorough cross-examination of the attorney's former client who now serves as a State's witness. *People v. Cunningham*, 107 Ill. 2d 143, 149 (1985), citing *United States v. Jeffers*, 520 F.2d 1256, 1259 (7th Cir. 1975). *Jeffers* applied a two-prong test to decide whether or not a conflict of interest arises when one defense attorney represents more than one defendant. *Cunningham*, 107 Ill. 2d at 149.

The first prong of the test requires determining whether or not the defense attorney's pecuniary interests or future business would cause the attorney to avoid cross-examining the witness in a way that could be embarrassing or offensive to the witness. *Cunningham*, 107 Ill. 2d at 149. The second prong involves determining whether or not information the attorney received from the witness would be relevant to effectively cross-examining the witness. *Cunningham*, 107 Ill. 2d at 149-50. When the defense attorney is a public defender and the defendant is indigent, the answer to the first prong will be that the attorney has no pecuniary interest or future business that would prevent him from effectively cross-examining the State's witness. *Cunningham*, 107 Ill. 2d at 150.

Here, no actual conflict of interest arose because Shaffer, a public defender representing an indigent defendant, had no pecuniary interest or future business opportunities afforded to him based on his representation of Washington. Also, Shaffer conducted a thorough cross-examination of Washington and did impeach Washington's testimony. Specifically, Washington admitted that she was high when she wrote her statement, that she abused drugs, that she lied in her written statement to the police, and that she sold cocaine in the past to support her drug habit. In his cross-examination, Shaffer painted

Washington as a less than credible witness. Thus, we conclude that no actual conflict was manifested at trial because Shaffer did effectively cross-examine Washington.

We also conclude that no conflict of interest arose because the attorney-client privilege prevented the disclosure of Washington's conversation with Shaffer. An attorney-client privilege arises " '(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) *made in confidence* (5) *by the client*, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.' " (Emphasis in original.) *Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18, 26-27 (1992), quoting *People v. Adam*, 51 Ill. 2d 46, 48 (1972). When the attorney-client privilege attaches to the communication, it remains protected until the protection is waived, and only the client can waive the privilege. *Exline v. Exline*, 277 Ill. App. 3d 10, 14 (1995).

Several tests have been advanced to determine whether the privilege has been waived. *Dalen*, 230 Ill. App. 3d at 28. The three tests are the subjective analysis test, the objective analysis test, and the balancing test. *Dalen*, 230 Ill. App. 3d at 28. Given the facts presented here, we believe that the subjective analysis test should be applied.

Under the subjective analysis test, inadvertent disclosure can never result in a waiver of the privilege because the client had no intention of waiving the privilege, and a client must knowingly waive the privilege. *Dalen*, 230 Ill. App. 3d at 28. Under this test, we conclude that Washington did not waive the attorney-client privilege when she started talking about the conversation she had with Shaffer. As noted previously, the conversation was first mentioned when Washington was unresponsive to a question Shaffer posed to her. Nothing suggests that Washington knew she was waiving the attorney-client privilege and intending to waive the privilege. Rather, the record suggests that Washington's statement about the conversation was inadvertent.

The issue then becomes whether or not Washington would have waived the privilege if defendant was reprosecuted. We will not speculate about whether or not Washington would have waived the attorney-client privilege if defendant was reprosecuted. Furthermore, we do not believe that judicial economy would be well served by dismissing counsel, reappointing counsel, and starting trials over again when it is uncertain whether or not a witness will waive the attorney-client privilege when it comes time for the witness to testify. Finally, without Washington waiving the privilege, Shaffer was prohibited from discussing the contents of the conversation either during this trial or in a new trial.

While the conversation is privileged, it is important to look at how the trial court cured any conflict. Both *People v. Crawford*, 23 Ill. 2d 605 (1962), and *People v. Burage*, 23 Ill. 2d 280 (1961), are instructive on this issue. In *Crawford*, a jury found the defendant guilty of burglary. *Crawford*, 23 Ill. 2d at 606. At the trial, an accomplice testified and was asked where the defendant got the tools to commit the burglary. *Crawford*, 23 Ill. 2d at 609. The accomplice testified that the defendant acquired the tools from a previous burglary. *Crawford*, 23 Ill. 2d at 609. The defendant moved for a mistrial, and the trial court denied the motion. *Crawford*, 23 Ill. 2d at 609. Our supreme court concluded that the evidence of a prior offense was not admissible, but the trial court acted properly in denying the motion for a mistrial. *Crawford*, 23 Ill. 2d at 609. The court noted that any prejudice could have been cured by the defendant asking the trial court to strike the testimony and to admonish the jury. *Crawford*, 23 Ill. 2d at 609.

In *Burage*, the defendant was found guilty of the unlawful sale and possession of narcotic drugs. *Burage*, 23 Ill. 2d at 281. At trial, the police officer to whom the defendant sold the drugs testified. *Burage*, 23 Ill. 2d at 282. The defendant pressed the police officer for the contents of a conversation she had with the defendant. *Burage*, 23 Ill. 2d at 282. The police officer stated that the defendant told her he was trying not to get involved with drugs again after getting out of prison. *Burage*, 23 Ill. 2d at 282. The defendant moved for a mistrial but never asked that the jury be instructed to disregard the statement. *Burage*, 23 Ill. 2d 280. Our supreme court concluded that the defendant's prior offense was completely irrelevant. *Burage*, 23 Ill. 2d at 282. However, the court stated that a defendant cannot procure, invite, or acquiesce in the admission of evidence and then complain that the evidence is improper. *Burage*, 23 Ill. 2d at 283. The court also stated that a trial court is not obligated to exclude improper evidence when the defendant makes no objection and does not move to exclude the testimony or disclaim the witness's answers. *Burage*, 23 Ill. 2d at 283.

Here, the discussion of the conversation Shaffer allegedly had with Washington was not proper absent Washington waiving the privilege. However, the trial court cured any potential conflict by admonishing the jury.

Further, Shaffer invited Washington's comment about his conversation with her. Shaffer asked Washington if defendant's name was mentioned in her written police statement, and Washington stated that she did not mention defendant by name in the statement, but she did remember telling Shaffer that the drugs did not belong to her. Washington responded this way after being previously asked when

318

was the first time that she mentioned defendant's name. Shaffer objected, and the trial court ruled that Washington's answer was not responsive to the question. Shaffer then asked for a mistrial, or, in the alternative, Shaffer asked the trial court to instruct the jury that Washington's statement on cross-examination should be disregarded. The trial court denied the motion for a mistrial but did instruct the jury to disregard Washington's statement on cross-examination. Further, during jury instructions, the trial court told the jury that they should not consider evidence that was elicited but denied admission due to the sustaining of an objection. We conclude that no actual conflict was manifested at trial because defendant caused the conflict by pressing Washington to answer the question, and no actual conflict was manifested at trial because the trial court cured the conflict by instructing the jury to disregard Washington's statement on cross-examination.

There was a second problem raised when the assistant State's Attorney asked about Washington's conversation with Shaffer. However, Shaffer never objected to the testimony. We conclude that no actual conflict was manifested at trial because the trial court was not obligated to exclude testimony *sua sponte*, Shaffer never objected to the testimony, and nothing established that this testimony affected Shaffer's ability to represent defendant.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.