2021 IL App (3d) 190692

Opinion filed February 16, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| JESSE J. STINAUER, | ) | Fulton County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-19-0692 |
| | ) | Circuit No. 16-D-130 |
| and | ) | |
| | ) | |
| MOLLY K. STINAUER, | ) | The Honorable |
| | ) | William A. Rasmussen, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Holdridge and O'Brien concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        In late 2018, the trial court entered a judgment of dissolution dissolving the marriage of

Jesse J. Stinauer and Molly K. Stinauer, as well as an order for support requiring Jesse to pay

Molly maintenance of $125,000 and monthly child support of $500, based on his imputed gross

income of $330,000. One year later, Molly filed a petition to vacate the judgment of dissolution

and order for support, alleging that Jesse misrepresented his income during the dissolution

proceedings. To support her allegations, Molly attached to the petition an e-mail from Jesse's

counsel to Jesse discussing Jesse's gross income. Jesse filed a motion to strike the petition, alleging

1

that the e-mail attached to the petition was prohibited from disclosure by the attorney-client privilege. The trial court agreed and dismissed Molly's petition. We reverse and remand for an evidentiary hearing.

¶ 2                                    BACKGROUND

¶ 3        Petitioner Jesse J. Stinauer and respondent Molly K. Stinauer were married in 2008. They had two children together: O.R.S., born in 2009, and E.M.S., born in 2012. In 2016, Jesse filed a petition for dissolution of marriage. In documents filed with the court, Jesse estimated that his gross annual income for 2017 would be $265,259. Molly alleged that Jesse's gross annual income, based on a three-year average from 2013-15, was $366,263.

¶ 4        In November 2017, the trial court entered a judgment of dissolution of marriage, which incorporated a marital settlement agreement (MSA) entered into by Jesse and Molly. The dissolution judgment required Jesse to pay Molly maintenance totaling $125,000 and monthly child support of $500. The judgment stated that the maintenance award was calculated using an imputed gross annual income of $330,000 for Jesse.

¶ 5        In December 2017, the trial court entered a uniform order for support ordering Jesse to pay Molly $125,000 in maintenance and monthly child support of $500. That order also stated that the court imputed annual income to Jesse of $330,000.

¶ 6        In December 2018, Molly filed a "Petition to Vacate Judgment of Dissolution of Marriage and Uniform Order for Support Pursuant to 735 ILCS 5/2-1401." In her petition, Molly alleged that Jesse misrepresented his 2017 income during the dissolution proceedings. To support her allegations, Molly attached to the petition a copy of e-mail correspondence from Jesse's counsel to Jesse discussing Jesse's 2017 gross income, including up to $350,000 in potential additional profits that Jesse did not disclose at the dissolution proceedings. Molly alleged that she obtained

2

the correspondence after searching the contents of a cellular phone Jesse gave E.M.S. According to Molly, the phone had previously been owned and used by Jesse.

¶ 7 Molly alleged that she filed her petition to vacate judgment as soon as she discovered the e-mail correspondence on the cell phone. She alleged that the correspondence showed a "possible concealment of assets" by Jesse to the court during the dissolution proceedings. Molly asked the court for the following relief: (1) "to enter an Order vacating the Judgment and Uniform Order for Support, as it relates to the Petitioner's income, including but not limited to, the maintenance and child support amounts and the allocation of property," (2) to "allow [her] to issue discovery (including his 2017 tax returns, personal and business, as well as other business records), and depose any necessary witnesses," and (3) "thereafter conduct an evidentiary hearing on this Petition."

¶ 8 Jesse filed a motion to strike Molly's petition, asserting that the e-mail correspondence Molly obtained from the cell phone was protected by the attorney-client privilege and, therefore, could not be used to support the petition to vacate. Molly filed a response, asserting that (1) the attorney-client privilege does not apply, (2) the privilege was waived by Jesse, and/or (3) the crime-fraud exception to the privilege applies.

¶ 9 In August 2019, the trial court held a hearing on the motion to strike, where the parties argued their respective positions but did not present evidence. In October 2019, the trial court entered an order, which stated:

"The Court, having heard from the Parties and after reviewing the briefs submitted, finds that the document referred to and attached to Defendant's 1401 Petition is subject to the Attorney-Client privilege, and therefore *** cannot be used by the Defendant in any manner. The Court further finds that since Defendant may not

3

rely upon or use this document in any fashion and Defendant's Petition to Vacate the Judgment of Dissolution is dismissed."

¶ 10                                ANALYSIS

¶ 11                        I. Section 2-1401 Petition

¶ 12        Section 2-1401 of the Code of Civil Procedure (Code) establishes a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2-1401 (West 2018). Section 2-1401 requires that the petition be filed in the same proceeding in which the order or judgment was entered, but it is not a continuation of the original action. *Id.* § 2-1401(b). The statute further requires that the petition be supported by affidavit or other appropriate showing as to matters not of record. *Id.* Petitions must be filed not later than two years after the entry of the order or judgment. *Id.* § 2-1401(c).

¶ 13        Relief under section 2-1401 of the Code is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Section 2-1401 is a civil remedy that extends to both civil and criminal cases. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007).

¶ 14        Proceedings under section 2-1401 of the Code are subject to the usual rules of civil practice. *Id.* "Section 2-1401 petitions are essentially complaints inviting responsive pleadings." *Id.* Petitions are "subject to dismissal for want of legal or factual sufficiency." *Id.* A petition may be dismissed upon a challenge that, even taking as true its allegations, it does not state a meritorious defense or diligence. *Id.* A petition may be challenged through a motion to dismiss for failure to state a cause of action or if the face of the petition shows that the petitioner is not entitled to relief.

*Id.* Where the trial court dismisses a section 2-1401 petition, our standard of review is *de novo*. *Id.* at 18.

¶ 15                                    II. Attorney-Client Privilege

¶ 16          The attorney-client privilege protects communication made in confidence by a client to a professional legal advisor where the client seeks legal advice from that advisor. *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584 (2000). "The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982).

¶ 17          The attorney-client privilege, like all testimonial privileges, is inherently "inconsistent with the search for truth" because it "prevent[s] otherwise relevant and admissible evidence from being disclosed." *People v. Knuckles*, 165 Ill. 2d 125, 135 (1995). Thus, the attorney-client privilege must be "strictly confined within its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991).

¶ 18          Once it is established that information sought is protected by the attorney-client privilege, the party seeking the information has the burden of showing that the information is not privileged because an exception to the privilege applies. *In re Marriage of Decker*, 153 Ill. 2d 298, 321 (1992); *MDA City Apartments LLC v. DLA Piper LLP (US)*, 2012 IL App (1st) 111047, ¶ 28. Where one party asserts that a communication is protected by attorney-client privilege and the opposing party makes a sufficient showing that an exception to the privilege applies, the trial court should hold an evidentiary hearing on the matter. See *DeHart v. DeHart*, 2013 IL 114137, ¶ 73; see also *People v. Hart*, 194 Ill. App. 3d 997, 1003 (1990) (whether exceptions to physician-patient privilege applied could only be determined by trial court upon facts adduced at a hearing). If the

trial court fails to hold an evidentiary hearing to determine if an exception to a privilege applies, it is proper for the appellate court to reverse the trial court's ruling and remand the matter for a hearing. See *DeHart*, 2013 IL 114137, ¶ 74. On remand, the party seeking disclosure bears the burden of establishing that an exception to the privilege applies. *DeHart v. DeHart*, 2012 IL App (3d) 090773, ¶ 50, *aff'd*, 2013 IL 114137.

¶ 19                                    A. Crime-Fraud Exception

¶ 20        The crime-fraud exception is one of the recognized limits to the attorney-client privilege. *People v. Radojcic*, 2013 IL 114197, ¶ 41. The exception is triggered "when a client seeks or obtains the services of an attorney in furtherance of criminal or fraudulent activity." *Decker*, 153 Ill. 2d at 313. "[W]here the crime-fraud exception applies, no attorney-client privilege exists whatsoever, and the communication is not privileged." *Id.*

¶ 21        "The rationale underlying the crime-fraud exception is intimately connected to the nature of the attorney-client relationship." *Radojcic*, 2013 IL 114197, ¶ 42. "[I]n seeking legal counsel to further a crime or fraud, the client does not seek advice from an attorney in his professional capacity." *Decker*, 153 Ill. 2d at 313. The client either conspires with the attorney or deceives the attorney. *Radojcic*, 2013 IL 114197, ¶ 42. In the former case, the privilege will not apply because it cannot be the attorney's business to further any criminal object. *Id.* In the latter case, the privilege does not apply because the attorney's advice has been obtained by fraud. *Id.* "In other words, the attorney-client privilege 'takes flight if the relation is abused.' " *Id.* (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)).

¶ 22        A client may consult with his attorney about the legal implications of a proposed course of conduct, or how to defend against the legal consequences of past conduct, without triggering the crime-fraud exception. *Id.* ¶ 43. Such good-faith consultations are protected by the attorney-client

6

privilege. *Id.*; *Decker*, 153 Ill. 2d at 314. "The privilege does not extend, however, to a client who seeks or obtains the services of an attorney to further an 'ongoing or future crime or fraud.' " *Radojcic*, 2013 IL 114197, ¶ 43 (quoting Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence § 6.13.2, at 976 (2002)). "Such a client 'will have no help from the law.' " *Id.* (quoting *Clark*, 289 U.S. at 15).

¶ 23       The focus of the crime-fraud exception is on the intent of the client, not the legitimacy of the services provided by the attorney. *Id.* ¶ 49. An attorney may be completely innocent of wrongdoing, yet the privilege will give way if the client sought the attorney's assistance for illegal ends. *Clark*, 289 U.S. at 15. To invoke the crime-fraud exception, " 'the proponent of the evidence must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful.' " *Radiac Abrasives, Inc. v. Diamond Technology, Inc.*, 177 Ill. App. 3d 628, 635 (1988) (quoting *State ex rel. North Pacific Lumber Co. v. Unis*, 579 P.2d 1291, 1295 (Or. 1978)).

¶ 24       To justify disclosure of otherwise privileged attorney-client communications, a party asserting that the crime-fraud exception applies must do more than simply allege fraud or illegality. *Decker*, 153 Ill. 2d at 321. The party seeking disclosure must "make some initial evidentiary showing to establish the exception." *Id.* at 322. The proponent of the exception must present evidence from which a " 'prudent person' " would have a " 'reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.' " *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984)). "Fraud is generally defined as a knowing misrepresentation of the truth or a concealment of a material fact to induce another to act to his

detriment." *People v. Flynn*, 352 Ill. App. 3d 1193, 1995 (2004) (citing Black's Law Dictionary 670 (7th ed. 1999)).

¶ 25    Here, Molly alleged in her petition that Jesse misrepresented his income during the dissolution proceedings and alleged that Jesse's actions constituted a "possible concealment of assets." In the e-mail communication at issue, Jesse's counsel referenced Jesse possibly receiving an additional $350,000 in income in 2017, which Jesse never disclosed during the dissolution proceedings. Under these circumstances, Molly has presented sufficient evidence to cause a " 'prudent person' " " 'to suspect the perpetration or attempted perpetration of a *** fraud' " by Jesse during the dissolution proceedings " 'and that the communications [between Jesse and his counsel] were in furtherance thereof.' " See *Decker*, 153 Ill. 2d at 322 (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d at 1039).

¶ 26    Molly has sufficiently alleged that the crime-fraud exception to the attorney-client privilege applies to the e-mail correspondence. The trial court should have held an evidentiary hearing on the matter. See *DeHart*, 2013 IL 114137, ¶¶ 73-74. We reverse the trial court's ruling and remand the matter for an evidentiary hearing at which Molly bears the burden of proving that the exception applies. See *id.*

¶ 27                                    II. Waiver of Privilege

¶ 28    On remand, the trial court should also consider whether Jesse waived the attorney-client privilege by giving his cell phone containing the attorney-client e-mail communication to E.M.S.

¶ 29    The protections afforded by the attorney-client privilege can be waived by the client, "the person whom the privilege is intended to benefit." *Turner v. Black*, 19 Ill. 2d 296, 309 (1960). The waiver can be either express or implied. *Lama v. Preskill*, 353 Ill. App. 3d 300, 305 (2004).

¶ 30    An express waiver arises when a client voluntarily testifies about privileged communications. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66. A client may also waive the privilege by expressly agreeing to do so or by failing to assert the privilege when privileged information is requested. *Id.* An implied waiver may be found when a "client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation." *Id.* However, a party can preserve the privilege by attempting to limit disclosure. *Id.* Generally, failure to assert the privilege prior to turning over privileged documents constitutes a voluntary waiver. *Id.* The determination of whether a party has waived the privilege is made on a case-by-case basis. *Id.*

¶ 31    In addition to the express/implied test of waiver, several other tests exist to determine whether the attorney-client privilege has been waived. See *Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18, 28 (1992). Those tests are the subjective analysis, the objective analysis, and the balancing test. *Id.* Under the subjective analysis, "inadvertent disclosure can never result in a true waiver because 'there was no intention to waive the privilege, and one cannot waive the privilege without intending to do so.' " *Id.* (quoting *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 208 (N.D. Ind. 1990)). Under the objective analysis, the court need only confirm that the document was made available to a third party. *Id.* Once the " 'confidentiality' " of the document has been " 'breached' " by disclosure, the privilege is destroyed. (Internal quotation marks omitted.) *Id.* (quoting *Golden Valley*, 132 F.R.D. at 208). Finally, "under the balancing test, a court considers five factors to determine if a party waived the attorney-client privilege: '(1) the reasonableness of the precautions taken to prevent the disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.' " *Id.* (quoting *Golden Valley*, 132 F.R.D. at 209).

9

¶ 32    Illinois courts have decided questions of waiver of the attorney-client privilege using the express/implied test, the subjective analysis, and the balancing test. See *Center Partners*, 2012 IL 113107, ¶¶ 68-74 (applying the express/implied waiver test and finding defendants did not waive privilege); *Fox Moraine, LLC v. United City of Yorkville*, 2011 IL App (2d) 100017, ¶¶ 64-69 (applying the express/implied test and finding aldermen waived privilege by failing to treat a report as confidential and speaking freely about it during open deliberations); *Lama*, 353 Ill. App. 3d at 306 (finding an implied waiver under the express/implied waiver test where the plaintiff voluntarily injected into the case issues regarding communications with counsel); *People v. Murry*, 305 Ill. App. 3d 311, 316 (1999) (applying the subjective analysis test and finding no waiver because the disclosure was inadvertent); *Dalen*, 230 Ill. App. 3d at 29 (applying the balancing test because the other tests "result in decisions based on mere mechanical application rather than a judicial reason and fairness").

¶ 33    Here, Molly argues that Jesse waived the attorney-client privilege by giving his cell phone containing the relevant e-mail correspondence to a third party, E.M.S. On remand, the trial court should determine which waiver test applies and if Jesse's actions constituted waiver of the attorney-client privilege.

¶ 34                                              CONCLUSION

¶ 35    The judgment of the circuit court of Fulton County is reversed, and the cause is remanded for proceedings consistent with this decision.

¶ 36    Reversed and remanded.

10

**No. 3-19-0692**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Stinauer*, 2021 IL App (3d) 190692 |
| **Decision Under Review:** | Appeal from the Circuit Court of Fulton County, No. 16-D-130; the Hon. William A. Rasmussen, Judge, presiding. |
| **Attorneys for Appellant:** | Linda J. Watson, of Peoria, for appellant. |
| **Attorneys for Appellee:** | Robert J. Hills and Christopher J. Spanos, of Westervelt, Johnson, Nicoll & Keller, LLC, of Peoria, for appellee. |